In re Rodney B. KRAGNESS and Aileen R. Kragness, dba Kragness Farms, Debtors.

BOWERS DISTILLERY, INC., an Oregon corporation, Plaintiff,

v.

Rodney B. KRAGNESS and Aileen R. Kragness, Defendants.

Bankruptcy No. 683–08423–R7.

Adv. No. 684–6025–R.

United States Bankruptcy Court, D. Oregon.

July 25, 1986.

Carl R. Neil, Lindsay, Hart, Neil & Weigler, Portland, Or., for plaintiff.

Arlen Swearingen, Martha Rodman, Gleaves, Swearingen, Larsen & Potter, Eugene, Or., Mark H. Peterman, Stoel, Rives, Boley, Fraser & Wyse, Portland, Or., for defendants.

## MEMORANDUM OPINION

ALBERT E. RADCLIFFE, Bankruptcy Judge.

This adversary proceeding was brought by Bowers Distillery, Inc., a creditor, to determine whether the interest of the debtor-defendant, Aileen R. Kragness, arising from a Hawaiian testamentary trust, specifically, the JLP Robinson Trust, should be included in the bankruptcy estate herein, to compel the debtors to pay the debt owed to the plaintiff-creditor and/or to secure dismissal of the bankruptcy proceeding instituted by the debtor-defendants on the basis that the proceeding was filed in bad faith.

In a companion adversary proceeding, *Gordon C. York, Inc., Trustee and Bowers Distillery, Inc., an Oregon corporation v. Rodney B. Kragness and Aileen R. Kragness, husband and wife; et al. (In re Kragness)*, 58 B.R. 939 (Bankr.D.Or.1986), this court held that the interest of defendant, Aileen R. Kragness, in the JLP Robinson Trust, is excluded from this bankruptcy estate since such beneficial interest is protected by a valid spendthrift clause contained in the Will of JLP Robinson and that distribution to Aileen R. Kragness of her share of the corpus of that trust occurred more than 180 days after the filing of her bankruptcy petition and is thus, protected by operation of 11 U.S.C. 541(a)(5)(A) and 11 U.S.C. 541(c)(2).

As a result of this court's decision in the companion adversary proceeding and fur-

ther refinement of the pre-trial process in this adversary proceeding, plaintiff advanced three claims for relief at trial. First, plaintiff contends that this bankruptcy case should be dismissed as it was filed by the defendants in bad faith. Second, in the alternative, plaintiff seeks to have the interest of Aileen R. Kragness included in the bankruptcy estate on a theory of estoppel, contending that since the defendants specifically promised to pay the obligation owing to plaintiff from Aileen R. Kragness's interest in the JLP Robinson Trust, that the defendants should now be estopped to exclude this asset from their bankruptcy. Finally, as a third alternative, plaintiff maintains that at the very least this court should require the defendants to pay the obligation owing to plaintiff, i.e. create an equitable exception to discharge.

The following facts have been established by the pre-trial order and found by the court to be pertinent:

1. Defendants, Rodney B. Kragness and Aileen R. Kragness are debtors in this Chapter 7 proceeding. They filed their joint petition for relief under Chapter 7 on December 7, 1983.

2. Plaintiff, Bowers Distillery, Inc., has filed proof of its claim as a creditor of Rodney B. Kragness and Aileen R. Kragness.

3. Prior to June 4, 1984, Aileen R. Kragness was a beneficiary of a testamentary trust known as the JLP Robinson Trust. By its terms, the JLP Robinson Trust terminated on June 4, 1984, which was 183 days after the filing of the Kragnesses' bankruptcy petition.

4. Pursuant to the terms of the JLP Robinson Trust, Aileen R. Kragness had a two-fifteenths interest in the corpus of that trust upon its termination.

5. Just prior to termination of the JLP Robinson Trust, the trust transferred the real estate assets comprising the trust corpus to a limited partnership known as the JLP Robinson Limited Partnership. Upon termination of the JLP Robinson Trust, 33,333 ⅓ units of a total of 250,000 units in the limited partnership (a two-fifteenths interest) were distributed to Aileen R. Kragness.

6. Upon termination of the JLP Robinson Trust, a portion of the trust corpus was distributed to the beneficiaries in cash. An additional portion is being or will be distributed in the form of shares of stock.

7. The JLP Robinson Trust was established by the Last Will and Testament of J. Lawrence P. Robinson, which was admitted to probate in Hawaii on February 6, 1947.

8. Paragraph 6(g) of this Will provides in part as follows:

"I direct that no title or interest in the money or other property composing this trust estate or any income accruing therefrom or thereon shall vest in any beneficiary of this trust during its continuance, nor shall any such beneficiary have the power or authority to anticipate in anywise any of the rents, issues, profits, income, moneys or payments herein provided to be devoted or paid to any beneficiary, or any part thereof, nor to alienate, convey, transfer or dispose of the same or any interest therein or part thereof in advance of payment; nor, shall the same be involuntarily alienated by any beneficiary or be subject to attachment or execution or be levied upon or taken upon any process for any debts which any beneficiary of this trust estate shall have contracted or shall contract, or in satisfaction of any demands or obligations which any beneficiary shall incur or be liable for, and all payments authorized and provided to be made by said Trustees shall be made and shall be valid and effectual only when made to the beneficiary to whom the same shall appertain and belong, and upon the individual receipt of such beneficiary * * *."

9. The amount owing to plaintiff from the defendants as of the date of the petition was $1,003,252.50, representing $784,300 in principal and $238,952.50 in accrued interest.

10. Aileen R. Kragness' share of the cash distribution of the JLP Robinson Trust was $126,666.67. The value of the

shares of stock to be distributed to her from the JLP Robinson Trust was approximately $110,000 as of May 31, 1984.

11. The defendants' debt to plaintiff arises out of their purchase, from plaintiff, of a 475–acre farm and related farm equipment.

12. In the fall of 1980, the defendants entered into negotiations with plaintiff for the purchase of this farm and equipment. These negotiations resulted in agreements dated December 18, 1980, and January 13, 1981, whereby the defendants agreed to purchase the farm and equipment for a total price in excess of $1,600,000.

13. The defendants made a down payment of $851,000 from the proceeds of a $900,000 loan they obtained from the Federal Land Bank. This loan was secured by a first mortgage on the farm. The defendants did not put up any cash aside from the proceeds of their loan from the Federal Land Bank for the purchase of the farm and equipment from plaintiff.

14. The defendants agreed to pay plaintiff the remaining principal balance of $784,300, plus interest, on or before December 31, 1984, several months after the JLP Robinson Trust was due to terminate. The defendants executed four promissory notes to plaintiff to that effect. These notes were secured by a second mortgage on the farm and by security interests in the equipment and in certain life insurance policies.

15. During the negotiations, an accountant, Donald E. Kernutt, provided both plaintiff and the defendants with information and data about Aileen R. Kragness' interest in the JLP Robinson Trust and two other trusts from which Aileen R. Kragness is entitled to receive income. Plaintiff and the defendants had not had any prior business dealings with each other, but Donald E. Kernutt had independently acted as accountant for both plaintiff and for the defendants in the past. Plaintiff did not independently examine the trust documents.

16. Paragraph 22 of the earnest money agreement between plaintiff and the defendants, dated October 31, 1980, provided as follows:

"PURCHASER'S FINANCIAL CONDITION. Purchaser acknowledges that Seller is entering into this transaction based upon Purchaser's representations that Purchaser intends to make the payments provided for herein or to finance the making of such payments from the proceeds of three (3) trusts located in Hawaii in which Aileen R. Kragness is the beneficiary and that the distributions from such trusts will be sufficient to make the payments required herein or to finance the making of such payments. The three (3) trusts are known as the J.L.P. Robinson Trust, the Alexander Robinson Trust (Testamentary), and the Alexander Robinson Trust (Inter Vivos). Purchaser acknowledges that Seller intends to review the documents, assets and administration of the trusts prior to the closing of this sale. Purchaser shall cooperate in obtaining for Seller's review any trust documents and information about the trusts reasonably requested by Seller. In the event the trust documents and financial condition are not reasonably satisfactory to Seller and Seller's attorneys, Purchaser's earnest money deposited under the provision of Paragraph 3 hereof shall be refunded to Purchaser in accordance with Purchaser's written instructions, and this agreement shall be of no further force and effect. In the event Seller does not send to Purchaser written notice of such dissatisfaction on or before December 15, 1980, this condition shall be deemed satisfied."

17. Paragraph 4 of the Sale Agreement between plaintiff and the defendants, dated December 18, 1980, provided as follows:

"The parties acknowledge that the conditions set forth in Paragraph 14., 15. and 22. of the Earnest Money Agreement have been satisfied."

18. In January, 1981, the defendants took possession of the farm and equipment purchased from plaintiff.

19. The defendants made one interim payment to plaintiff in 1982, in the amount of $25,656.98. The payment made by defendants on their contract in 1982 was less than the amount of interest that had accrued when the payment was made.

20. The defendants were not successful in operating the farm, and, in January, 1983, they notified plaintiff that they did not intend to comply with their obligations under their purchase agreements and promissory notes. The defendants thereafter attempted to tender the farm back to plaintiff, subject to the Federal Land Bank's first mortgage. The defendants also failed to make payments to the Federal Land Bank and failed to make a required interim payment to plaintiff. Both of these failures constituted defaults under the agreements between plaintiff and the defendants and rendered the defendants' notes immediately due and payable.

21. On October 26, 1983, plaintiff filed suit against the defendants in the Circuit Court of the State of Oregon for Lane County to collect the amounts owing to it from the defendants on the four promissory notes. This suit was stayed by the filing of the defendants' Chapter 7 petition.

22. The farm has been sold by the Federal Land Bank in proceedings to foreclose its first mortgage for the amount due to it on the mortgage. Plaintiff did not bid in its mortgage at the foreclosure sale. Plaintiff will realize nothing from its second mortgage on the farm.

23. Most of the equipment and other assets in which plaintiff held a security interest have been sold or converted to cash. The amount realized from these assets was approximately $72,213.95. This amount, together with the value of the unsold assets, is less than the amount of interest accrued on the defendants' debt to plaintiff.

24. In addition to the property sold to them by the plaintiff (the Bowers Place), the defendants were purchasing and farming two other parcels of land. These are known as the Home Place consisting of approximately 120 acres and the Jarnagin Place consisting of approximately 153 acres. In addition, they were farming substantial acreage of leased property. As of the filing of the bankruptcy, the defendants owed approximately $1,900,000 to five creditors other than plaintiff.

At the trial held herein on June 9–10, 1986, plaintiff appeared by and through its attorney, Carl R. Neil, the defendants appeared personally and by counsel, Mark H. Peterman. At the conclusion of the trial, this court ruled in favor of the defendants as to plaintiff's claims that the interest of Aileen R. Kragness in the JLP Robinson Trust (now JLP Robinson Limited Partnership) should be included in the bankruptcy estate by estoppel or that the defendants should be required to pay the obligation owing to plaintiff. A brief explanation is in order.

■ Unless a Chapter 7 debtor is denied discharge under the provisions of 11 U.S.C. 727, a Chapter 7 proceeding discharges an individual debtor from all debts except for those debts listed in 11 U.S.C. 523(a). In determining whether a particular debt is excepted from discharge by Section 523, "the statute should be strictly construed in favor of the debtor" so as to be consistent with the "liberal spirit" of the bankruptcy system. 3 *Collier on Bankruptcy* § 523.-05A (1983) ("Collier"). Plaintiff concedes that this is not a misrepresentation case. In other words, at the time that the defendants entered into negotiations with plaintiff for the purchase of the farm and equipment and at the time that the transaction was consummated, the defendants fully intended to keep their promise to plaintiff and to pay plaintiff the remaining principal balance of its debt, plus interest, on or before December 31, 1984 by utilizing the interest of Aileen R. Kragness in the JLP Robinson Trust to either make direct payment or re-finance the farm. Thus, this case does not involve any fraud on the part of the defendants. Accordingly, 11 U.S.C. 523(a)(2) would have no application in this case. None of the other exceptions to discharge provided for in Section 523 bear any resemblance to the facts as established in

this case. The testimony of the witnesses at trial established that it was only after the defendants had been unable to manage the farm at a profit and that farm prices had declined that defendants began to consider the filing of a bankruptcy petition to protect the interest of Aileen R. Kragness in the Hawaiian trusts from her creditors. This occurred approximately two years after the closing of the farm and equipment sales transaction between the plaintiff and defendants. As 3 Collier § 523.08 explains:

> " * * * [a] mere promise to be executed in the future is not sufficient to make a debt non-dischargeable."

■ As stated by this court at the conclusion of the trial, it is not appropriate for this court to create exceptions to discharge that are not provided by statute. Accordingly, this court held that the debt owed by defendants to plaintiff is a dischargeable obligation in bankruptcy and that defendants may not be required to pay this obligation as a condition for obtaining bankruptcy relief in the form of a discharge.

Plaintiff further contends that although the interest of Aileen R. Kragness in the JLP Robinson Trust is protected by the operation of 11 U.S.C. 541(a)(5)(A) and 11 U.S.C. 541(c)(2), that the asset should, nevertheless, be included in this bankruptcy estate by estoppel. The crux of plaintiff's argument is that since defendants specifically promised to pay the debt owed to plaintiff from this specific asset, that the defendants should now be estopped to exclude the asset from this bankruptcy estate. As stated above, plaintiff concedes that defendants are not guilty of any intentional misrepresentation or fraud. If that were the case, the appropriate remedy would be to declare the obligation owing by defendants to plaintiff to be non-dischargeable under 11 U.S.C. 523 as discussed above.

■ 11 U.S.C. 541(a)(5) only includes assets in the estate that the debtor acquires or becomes entitled to acquire within 180 days after the filing of her petition by bequest, devise or inheritance. Plaintiff's request to include trust assets in this estate asks this court to nullify the operation of this statute as the uncontroverted facts in this case are that Aileen R. Kragness received her distributive share of the corpus of the JLP Robinson Trust more than 180 days after her petition for relief was filed.

This court has already held, in the companion adversary proceeding, that any income received by Aileen R. Kragness from the testamentary trusts within 180 days after the filing of her petition is included in this bankruptcy estate and has entered an appropriate judgment in favor of the trustee.

In its memoranda, plaintiff has cited cases indicating that a party may be estopped from asserting the benefit of a statutory time limit if he has previously disclaimed any intention of doing so. *Glus v. Brooklyn Eastern District Terminal,* 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959); *Atkins v. Union Pacific Railroad,* 685 F.2d 1146, (9th Cir.1982); *Naton v. Bank of California,* 649 F.2d 691, (9th Cir.1981); *Sanchez v. Loffland Brothers Company,* 626 F.2d 1228 (5th Cir.1980), *cert. denied,* 452 U.S. 962, 101 S.Ct. 3112, 69 L.Ed.2d 974 (1980) and *Nichols and Company v. Cunard Steamship Ltd.,* 367 F.Supp. 947, (S.D.N.Y.1973). The cases relied upon by plaintiff are both factually and legally different from this case.

■ The uncontroverted testimony in this case indicated that as early as January, 1983, defendants advised plaintiff that they were encountering financial difficulties and that they were considering the filing of bankruptcy as one option to alleviate their financial problems. Indeed, it was indicated to plaintiff that bankruptcy would, in all likelihood be filed, if necessary, more than 180 days prior to the distribution date of the JLP Robinson Trust in order that the defendants might claim the protection of 11 U.S.C. 541(a)(5)(A). There was never any promise on the part of the defendants that they would not file bankruptcy and attempt to exclude testamentary trust assets from the bankruptcy estate.

Further, Jon Bowers, a vice-president of the plaintiff corporation, testified that he was aware that the trusts in question were spendthrift trusts and that the debtors could not give a security interest in the trust assets to plaintiff.

Finally, plaintiff concedes that it would be against public policy to enable a debtor to waive the remedial benefits and protection provided by the Bankruptcy Code. That same public policy does not prevail when a defendant waives a statute of limitations defense. Accordingly, plaintiff may not accomplish indirectly what cannot be done directly, that is, to avoid the operation of the spendthrift clause and the protection of 11 U.S.C. 541 afforded to the defendants.

■ The remaining issue, which was taken under advisement by this court at the conclusion of the trial, is plaintiff's request that this bankruptcy case be dismissed as a bad faith filing by debtors. Plaintiff has cited numerous cases in its memoranda for the proposition that there is an implied requirement of good faith in every bankruptcy proceeding. That concept is not open to serious debate. "Good faith" must, however, be defined in the context of a Chapter 7 proceeding such as the instant case. A different level of conduct may be required for debtors in a Chapter 7 liquidation where all non-exempt assets are surrendered to a trustee for liquidation as opposed to Chapter 11 and Chapter 13 cases where the debtor normally remains in possession of non-exempt assets.

11 U.S.C. 727 sets forth certain acts, conduct or omissions, by a debtor, which may result in the total denial of discharge in a Chapter 7 case. Arguably, any of these acts might be considered cause for dismissal of a bankruptcy case under 11 U.S.C. 707. In addition, 11 U.S.C. 521 prescribes certain duties that a debtor must perform. The failure, on the part of the debtor, to perform any of the duties enumerated in Section 521 may be grounds for dismissal of a Chapter 7 bankruptcy.

The majority of the cases cited by plaintiff appear to be Chapter 11 or Chapter 13 cases. In addition, many of the cases cited by plaintiff can be classified by factual patterns. In some of the cases where the court dismissed the proceedings on a finding of bad faith, it appeared that the debtor was merely stalling or attempting to obstruct judicial process. *Furness v. Lilienfield,* 35 B.R. 1006 (D.Md.1983), *In re St. Matthew Lutheran Church,* 1 C.B.C.2d 682 (Bankr.C.D.Cal.1986), *In re Erickson,* 26 B.R. 973 (Bankr.C.D.Cal.1983). In other cases, there was some evidence of fraudulent conduct on the part of the debtor in concealing assets or in forming a new "debtor entity" on the eve of bankruptcy to be the bankruptcy debtor thereby frustrating the attempts of creditors to reach the principals of the debtor entity or the real debtors. *In re O'Loughlin,* 40 B.R. 707 (Bankr.D.Mass.1984), *In re American Property Corp.,* 44 B.R. 180 (Bankr.M.D. Fla.1984), *In re Herndon Executive Center, Inc.,* 36 B.R. 803 (Bankr.M.D.Fla.1984).

■ In this case, plaintiff's sole ground for dismissal is that defendants filed their petition to take advantage of the protection provided by 11 U.S.C. 541(a)(5)(A) and 11 U.S.C. 541(c)(2) to protect the interests of Aileen R. Kragness in Hawaiian testamentary trusts. There are no allegations that the debtors have failed to perform their duties under Section 521 or that they have acted to conceal or transfer assets, that they have made false oaths, that they have formed corporate shells or other entities to frustrate their creditors, etc.

The case upon which plaintiff places its greatest reliance is *In re Khan,* 35 B.R. 718 (Bankr.W.D.Ky.1984) *remanded* 751 F.2d 162 (6th Cir.1984). In that case, the bankruptcy court dismissed a debtor's Chapter 7 petition where the debtor was a physician capable of earning approximately $200,000 per year. The bankruptcy involved, for the most part, a single creditor who had been injured while riding as a passenger in a car driven by the debtor. The debtor had promised to make lifetime payments to the injured creditor and then had breached his contract with her. The *Khan* case is of questionable precedential

value since it was remanded by the Sixth Circuit Court of Appeals. Further, there was a finding, at least by the court of appeals, that fraud had been involved in the case.

The district court found that the bankruptcy court had determined in the Chapter 11 proceeding (a previous bankruptcy petition filed by Khan) that Khan had fraudulently incurred his debt to Yusufji and that this fact, which Khan was precluded from relitigating, was sufficient to require dismissal of the Chapter 7 petitions. 751 F.2d at 163. (parenthesis added)

This court has failed to uncover any cases where a bankruptcy case was dismissed where the debtors' sole motivation was to avail themselves of legitimate protection afforded by the Bankruptcy Code.

Bankruptcy Code Section 707 permits the court to dismiss a Chapter 7 case for cause. Section 707(a) lists two situations which constitute cause, unreasonable delay by the debtor that is prejudicial to creditors and nonpayment of required fees and charges. Although this list is not exclusive, the legislative history makes it clear that "cause" does not include a situation in which the debtor has the ability to pay his debts soon after filing. Both the House and Senate Reports state:

> The section does not contemplate, however, that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal. To permit dismissal on that ground would be to enact a non-uniform mandatory chapter 13, in lieu of the remedy of bankruptcy. H R Rep No. 595, 95th Cong. 1st Sess 380 (1977); S Rep No. 989, 95th Cong. 2d Sess 94 (1978).

In the 1984 amendments, Congress added Section 707(b) which provides:

> (b) After notice and a hearing, the court, on its own motion and not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of

relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

Obviously, the defendants' debts in this case are not primarily consumer debts. Further, defendants filed their petition before the effective date of Section 707(b). In any event, it appears clear that Congress did not intend that a bankruptcy court could dismiss a case merely because the debtor might have the ability to repay his debts in whole or in part from post-petition earnings or assets, except in those specific situations provided for in Section 707(b). Accordingly, plaintiff's request for dismissal of this bankruptcy case should be denied. An appropriate judgment shall be entered.

This Opinion shall constitute findings of fact and conclusions of law under Federal Rule of Civil Procedure 52 as made applicable to this court by Bankruptcy Rule 7052, they shall not be separately stated.