**In re John Patrick GOULDING, Debtor.**

**Bankruptcy No. 87–01663–2.**

United States Bankruptcy Court, W.D. Missouri.

Nov. 17, 1987.

Sharon A. Cooney, Kansas City, Mo., for debtor.

Sarah W. Hayes, Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, Mo., for FDIC.

Arthur Federman, Kansas City, Mo., Trustee.

Mary Cofran, Federal Deposit Ins. Corp., Kansas City, Mo.

## MEMORANDUM OPINION

FRANK W. KOGER, Bankruptcy Judge.

On April 17, 1987, debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code. He listed $62,388.00 in assets, $14,771.04 in taxes owing the State of Missouri, $73,613.00 in secured debts and $593,013.28 in unsecured debts. Of the

latter amount, the Federal Deposit Insurance Corporation as successor to Indian Springs Bank and Republic Bank was the largest creditor in the sum of $378,956.45. Probably this case would have followed the normal and uneventful flow of most no asset Chapter 7 cases, had it not been for the fact that debtor receives some $144,000.00 per year or $12,000.00 per month from three irrevocable spendthrift trusts established by deceased relatives and the further fact that on January 30, 1988, debtor will receive over $200,000.00 as the corpus of one such trust. Since debtor was reaffirming all of his secured loans including his Mercedes, his Jeep Waggoneer, his farm in Bates County and discharging only his unsecured loans, the Federal Deposit Insurance Corporation felt that the fresh start envisioned by the Bankruptcy Reform Act of 1978 was far too fresh in this case. This led to the joint motion of the FDIC and the Trustee requesting the Court to dismiss the bankruptcy under Section 707(a) and Section 105 or to abstain under Section 305. The debtor filed answer, the parties were heard, and a joint stipulation filed on October 21, 1987. This Opinion follows.

■ The Court had initially instituted a Section 707(b) inquiry because debtor's schedules showed an income of $12,000.00 per month and anticipated monthly expenditures of $7,000.00 per month leaving some $5,000.00 per month in disposable income. However, counsel for debtor was quick (and proper) to point out that Section 707(b) is applicable only when the debts involved are primarily consumer debts. Debtor did list $4,000.00 owing for a fur coat, some $1,500.00 owing on American Express but well over 95% of debtor's obligations were business debts and were incurred for start up expenses in two illfated "bar business" ventures.

■ Counsel for debtor now points out with equal vigor that action under Section 305 is not warranted because that section only allows the Court to dismiss or suspend if "the interests of creditors *and the debtor* would be better served by such dismissal or suspension". While dismissal here

would serve the creditors very well, the Court has been unable to envision any basis for concluding that such action would "better serve" the interests of the debtor. Therefore, that portion of the joint motion under Section 305 will be OVERRULED.

■ That leaves the Court squarely up against the confines of Section 707(a). That section provides that the Court may dismiss, but only after notice and a hearing and only for cause. Because the non-exclusive reasons that constitute "cause" in Section 707(a) do not encompass any act or omission done or not done by this debtor, the question boils down to the very simple question of whether the fact that the debtor receives substantial income and will receive a substantial trust corpus in the near future constitutes "cause" for dismissal. If it does, the Court may dismiss. If not, the Court may not. The Court's power to dismiss, vel non, under Section 707(a) is reinforced by Section 105(a) which grants the Court broad and extensive powers to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions" of Title 11. But while the words in Section 707(a) and Section 105(a) would appear to grant the Court unrestrained and unmeasured power within the confines of Chapter 11 of the United States Code, such appearance must always be framed within the intent and the purpose of the law being administered. To presume otherwise could create despots and tyrants of judges, recalling the famous words of Lord Acton: "Power tends to corrupt and absolute power corrupts absolutely". It is, therefore, the responsibility of this Court to glean the intent and purpose of the law enacted by Congress, and to forget for the moment that a person with an income of $12,000.00 per month, due to receive some $200,000.00 within three months, hardly fits the Court's vision of the "honest but unfortunate" debtor the Supreme Court visualized in *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

Clearly the first place to look for intent and purpose is the Congressional history. In 1977 and 1978 the House Report and the

Senate Report state the Congressional intent with regard to Section 707. (At that time there was no Section 707(b)). They state:

"The section does not contemplate, however, that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal". H.R.Rep. No. 595, 95th Cong., 1st Sess. 380 (1977); S.Rep. No. 989, 95th Cong., 2nd Sess. 94 (1978).

It is difficult to contemplate how Congress could more emphatically have stated that the debtor's net worth or future prospects is not "cause" as the word is used in Section 707 for dismissal.

Congress did amend Section 707 in 1984 to add Section 707(b) and thus avoid a portion of the effect of those words. However, Section 707(b), as stated earlier in this opinion, applies only to debtors "whose debts are primarily consumer debts". In this case debtor has the unpaid bill of $4,000.00 for the fur coat, $1,500.00 for his American Express card, and some other minor charges, but they in total still constitute less than 2% of the scheduled indebtedness. The historical record thus leaves the Court with the distinct impression that Congress did not intend dismissal for circumstances such as are present in this case.

The next line of inquiry is to consider any cases. Although this Court heartily endorses the decision and the language of the Honorable Dennis J. Stewart in *In the Matter of Bruno*, 68 B.R. 101 (Bkrtcy.W.D. Mo.1986) in refusing to allow a convicted murderer to discharge (primarily) the $1,700.00 funeral bill of the wife whom he had killed; and although this Court, like Judge Stewart, fears that "if the bankruptcy process is permitted to be abused by those whose purposes are not in consonance with this ideal, the effect tends to be the same as if proper use of the bankruptcy laws were wholly suppressed"; nevertheless there is a distinct difference between the two cases. In Judge Stewart's case the debtor was attempting to escape the economic consequences of his criminal activities. In the instant case the debtor is only seeking to slip through a loophole that the legislative body fashioned. Were there criminality or fraud here, this opinion would be far easier to write.

The Court has only been able to find one case that is squarely in point. *In re Kragness*, 63 B.R. 459 (Bkrtcy.D.Or.1986). In that case the Honorable Albert E. Radcliffe faced perhaps an even more egregious situation than this Court does. (At least the debt and the spendthrift trust distributions were both substantially larger). After a careful and detailed opinion, Judge Radcliffe ruled that dismissal under Section 707(a) and Section 707(b) was not permissible given the state of the law and its historical background. The Court has read and considered all of the other cases suggested by the movants. Most of these cases deal with the "good faith" requirement in Chapter 11 and Chapter 13. See also the repeated filing and refiling line of cases as set out in *In re Kahn*, 35 B.R. 718 (Bkrtcy. 1984). But note that the exasperatedly bold statements of that case were remanded for factual findings in *In re Kahn*, 751 F.2d 162 (6th Cir.1984).

This Court, albeit reluctantly, rules the basic issue in favor of the debtor and against the Federal Deposit Insurance Corporation and the Trustee and refuses to dismiss the petition in full recognition that it is the duty of a Judge to apply the laws as written by Congress, rather than to substitute personal abstract concepts of justice and morality, to the cases it hears. The Court does note from its research that any and all disbursements from the trust funds accruing to the debtor within six months of the filing date of the bankruptcy petition become property of the estate. See Section 541(a)(5)(A). Since debtor has received all of the monthly payments directly and no restrictions were ever placed thereon, the Trustee is directed to serve upon the Bank of Kansas City a copy of this Opinion and the Bank is directed to hold the sum of $72,000.00 from any distribution of the corpus to the debtor until further Order of this Court. Said sum shall be deposited in an interest bearing account and shall only be distributed after further proceedings.

The foregoing shall constitute Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.