In re Robert H. LATIMER and Joyce C. Latimer, Debtors.

Adolph E. SINKOW, Plaintiff,

v.

Robert H. LATIMER and Joyce C. Latimer, Defendants.

Bankruptcy No. 87–01312S.
Adv. No. 87–0900S.

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 1, 1988.
As Amended Feb. 5, 1988.

Mitchell W. Miller, Jack K. Miller, Philadelphia, Pa., for debtors.

Marjorie Rendell, Lisa Jacobs, Philadelphia, Pa., for Sinkow.

Peter L. Fiss, Corr, Stevens & Fenningham, Trevose, Pa., for Corr, Stevens & Fenningham.

Arthur Liebersohn, Philadelphia, Pa., Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

Consolidated for disposition before us are an adversary proceeding by a large creditor of the Debtors objecting to their discharge on the basis of 11 U.S.C. §§ 727 (a)(2), (a)(4), and (a)(5), and a motion to dismiss the Debtors' bankruptcy case filed by the plaintiff in the adversary proceeding and joined by another creditor on the basis of 11 U.S.C. §§ 707(a) and 105(a).

■ In the adversary proceeding, we find that the creditor fell far short of meeting its necessarily stiff burdens of establishing cause for denial of the Debtors' discharge pursuant to 11 U.S.C. §§ 727(a)(2), (a)(4), or (a)(5). Resolution of the motion to dismiss causes us to review the scope of 11 U.S.C. § 707(a) and to determine that the "cause" for dismissal referenced there is a narrow concept, confined to violations of the Bankruptcy Code or court orders. Thus, such "cause" does not include a consideration of whether the debtor has "substantially abused" the provisions of Chapter 7 or has proceeded in "bad faith." We therefore have little difficulty in denying any relief to the creditors in either of the matters before us.

The Debtors, husband and wife, filed a joint Chapter 7 bankruptcy case on March 18, 1987. They filed their Schedule of Income and Expenses and Schedules of Assets and Liabilities on May 7, 1987. A meeting of creditors pursuant to 11 U.S.C. § 341(a) was conducted in their case by the interim Trustee, Arthur P. Liebersohn, Esquire, on August 18, 1987.

The flurry of conflict between the Debtors and ADOLPH E. SINKOW (hereinafter referred to as "Sinkow"), the large creditor who instituted both the adversary proceeding and the motion in issue, appears to have been set off by the Debtors' filing of both a motion to avoid the lien of a judgment of at least $160,000.00 in favor of Sinkow against their residence pursuant to 11 U.S.C. § 522(f)(1) and an adversary proceeding, at Adv.No. 87–0867S, attacking the validity of Sinkow's lien pursuant to 11 U.S.C. § 506(a), on October 6, 1987. Ten days later, on October 16, 1987, Sinkow initiated the instant adversary proceeding against the Debtors. On November 6, 1987, the Debtors also filed a motion pursuant to § 522(f)(1) to avoid the lien of a judgment in the amount of about $3,500.00 against their residence in favor of the other creditor involved herein, the law firm of Corr, Stevens, & Fenningham (hereinafter referred to as "Corr").

The lien avoidance matters involving Sinkow were both amicably resolved by an agreement that Sinkow's lien would be reduced to $25,500.00, the equity remaining in the premises, valued at $130,000.00 and owned exclusively by the wife-Debtor, after exemptions. Corr's lien was avoided without response or objection.

On October 19, 1987, Sinkow filed a motion to compel the interim Trustee, Mr. Liebersohn, to investigate the affairs of the Debtors, reciting, *inter alia*, as grounds therefor the Debtors' combined salary of $85,000.00, their valuable home, and "[d]iscrepancies in the Debtors' lifestyle with their claim of bankruptcy," specifically noting their $200.00 a month claimed expenditure to clean clothing valued at $300.00, and the fact that they sent their children to private school and were driving a 1984 Mercedes automobile. After a hearing on November 18, 1987, at which Mr. Liebersohn indicated no interest in "investigating" the Debtors' situation further because of their apparent lack of assets available for distribution to unsecured creditors, we denied the motion without prejudice to Sinkow to move to dismiss the case.

On December 10, 1987, the adversary proceeding was listed for trial. Apparently having proceeded no further in preparation for trial nor having filed any motion to dismiss the case between November 18, 1987, and December 10, 1987, Sinkow moved for a continuance, indicating a de-

sire to file a motion to dismiss on that very date and consolidate the hearing on that motion with that on the adversary proceeding. The continuance request was vigorously opposed by the Debtors, whose counsel contended that the husband-Debtor had arranged to appear at the hearing and that he would suffer crucial financial detriment if he were compelled to make similar arrangements again. Although it is not our policy to lightly grant any continuances, especially where the moving party cites, as here, less than compelling reasons for doing so and the motion is opposed, we granted Sinkow's motion in an Order of December 11, 1987. We did so because we would otherwise have been faced with a subsequent hearing on the motion to dismiss in any event. Therefore, we scheduled a consolidated hearing on the adversary proceeding and the motion to dismiss on December 22, 1987, with the proviso that, if the Debtors were successful in these proceedings, they could move the court to allow as costs compensation of their reasonable expenses incurred by our granting the continuance from Sinkow.

On December 15, 1987, Sinkow moved to take a Bankruptcy Rule 2004 Examination of the Debtors. Recalling the events of December 10, 1987, we denied this motion, stating that same "should have been conducted well before the last minute requests made by the movant," or a least should have been mentioned and scheduled on or before December 10, 1987. On December 18, 1987, Corr moved to join the motion to dismiss, which motion we ultimately granted on December 22, 1987, at the outset of the hearing.

The only witness at the hearing was the husband-Debtor, called both as of cross-examination by the creditors and in the Debtors' own case. An offer by the Debtors to call the father-partner of their counsel was refused. The Debtors also offered into evidence eleven pleadings filed in either their main bankruptcy case or in Adv. No. 87–0867S. At the close of the trial, we accorded the parties until January 8, 1988 (creditors), and January 22, 1988 (Debtors), to file Briefs supporting their respective positions. Since we deem no disputed factual matters as significant to our disposition, we have prepared our Opinion in narrative form.

The husband-Debtor (referred to hereinafter as "the Debtor") testified that the root of the Debtors' financial troubles began in 1982 or 1983, when he formed a warehousing and moving business called Transportation Services International. Sinkow had initially been a customer of that business, and subsequently provided substantial financial assistance to the Debtors on its behalf. However, the business nevertheless failed, the Debtor did not repay Sinkow's loans, and in September, 1984, Sinkow purchased the business at a sheriff's sale for $2,000.00, apparently retaining a sizable deficiency claim against the Debtors.

The Debtor stated that his bankruptcy filing was necessitated by the combination of Sinkow's attempt to foreclose on the Debtors' home and of a threat by the Internal Revenue Service (hereinafter referred to as "IRS"), owed taxes as a result of the aforesaid business reversals, to attach his wages.

The focal point of the creditors' claims was the Debtors' monthly Schedule of Current Income and Expenditures, which we summarize as follows:

INCOME

| | |
|---|---|
| Husband | $1,800.00 |
| Wife | 2,644.00 |
| Bonus | 500.00[1] |
| TOTAL | $4,944.00 |

EXPENSES

| | |
|---|---|
| Mortgages (2) | $1,640.00 |
| Utilities | 429.00 |
| Food | 500.00 |
| Clothing | 140.00 |
| Laundry & Cleaning | 200.00 |
| Newspapers, Magazines, Books | 30.00 |
| Medical Expenses | 100.00 |
| Transportation | 592.00 |
| Recreation | 100.00 |
| Insurance | 296.00 |

**1.** This was described as a one-time sum received by the wife-Debtor.

EXPENSES

| | |
|---|---|
| Taxes (payments to IRS on delinquency) | $ 400.00 |
| Tuition to private schools | 620.00[2] |
| Housecleaning | 200.00 |
| Child care | 200.00[2] |
| TOTAL | $5,447.00 |

The Debtor's Statement of Property included their home, solely in the wife-Debtor's name, valued at $130,000.00 and encumbered by two mortgages totalling $97,-000.00, as well as Sinkow's lien; home furnishings valued at $1,470.00; cash and bank deposits of $51.00; wearing apparel valued at $300.00; and jewelry valued at $500.00. All of the Debtors' property was claimed to be exempt.

The Debtor testified that the deficit of about $500.00 of monthly expenses over income had been made up by not paying the IRS on some occasions and, on others, by contributions from the wife-Debtor's mother, afflicted with Alzheimer's disease, who resided with them. Also, as of September, 1987, the Debtor obtained new employment, which increased his monthly earnings to about $3,000.00.

Sinkow raised numerous questions concerning the legitimacy of several of the expenses claimed. Most striking were as follows: (1) A $200.00 monthly bill for cleaning clothing allegedly worth only $300.00; (2) Costs for private tuition, day care, and housekeeping which exceeded $12,000.00 annually; and (3) Rental of a luxury car. The Debtor's responses to these inquiries were as follows: (1) Clean clothes were a necessity, since both he and his wife were employed in marketing. The sale value of used clothing, despite its expense in procurement, was believed to be very low; (2) Rumors of a "drug problem" in the Upper Dublin, Montgomery County public school system had caused the Debtors to shun it. Demands of employment made it necessary to hire someone to pick up the children and care for them after school and to clean the house; and (3) The Mercedes had been rented in better times, and the Debtors' present financial position prevented them from obtaining alternative

transportation if they terminated their lease on that vehicle.

Corr's principal contention was that the Debtors were "manipulating" their schedules and the bankruptcy laws to unfairly maximize their exemptions. The Debtors conceded that they had contemplated filing a Chapter 13 case after the instant Chapter 7 case was closed, and Corr seized upon the potential of the Debtor's filing a "Chapter 20" case, i.e., a Chapter 7 case followed immediately by a Chapter 13 case, as further evidence of such manipulation.

We found the Debtor to be dignified, poised, and totally credible. We cannot say that we completely share his sense of financial priorities, and we do question the wisdom of the Debtors' expenditure of tuition costs for private schooling because of the unlikely actuality and/or significance of a "drug problem" in a suburban school setting upon a kindergarten student and a second-grade student, and their purported inability to obtain a cheaper alternative to their Mercedes. However, none of their other expenses appear excessive to us. We also emphasize that we do not doubt that any of the explanations given by the Debtor for the expenditures of him and his wife were in fact accurate; we merely doubt the wisdom of the tuition and automobile expenditures. Clearly, the Debtors are persons who became accustomed to living with the amenities of the upper middle class, and have been unable to completely adjust themselves to a somewhat altered financial depression. Their lifestyle, while not that of the "rich and famous," would be the envy of the majority of debtors who file personal bankruptcies in our court. However, we do not think that any of the above findings justify any of the relief sought by the creditors.

Most easily resolved is the adversarial complaint, based upon 11 U.S.C. §§ 727(a)(2), (a)(4), and (a)(5), which provide as follows:

§ 727. Discharge.

(a) The court shall grant the debtor a discharge, unless—

. . . . .

2. The Debtors' two children were five years and seven years of age.

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

 (A) property of the debtor, within one year before the date of the filing of the petition; or

 (B) property of the estate after the date of the filing of the petition;

 . . . . .

(4) the debtor knowingly and fraudulently, or in connection with the case—

 (A) made a false oath or account;

 (B) presented or used a false claim;

 (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

 (D) withheld from an offer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities; ...

We discussed the considerable burden placed upon a plaintiff in an action challenging a discharge on these grounds in *In re Somerville*, 73 B.R. 826, 833–37 (Bankr. E.D.Pa.1987); and *In re Woerner*, 66 B.R. 964, 971–76 (Bankr.E.D.Pa.1986), *aff'd*, C.A. No. 86–7324 (E.D.Pa. April 28, 1987). There, we stated that "objections must be construed strictly against the objector and liberally in favor of the debtor," 73 B.R. at 833, and 66 B.R. at 971, and that "public policy requires that objections to discharge not be easily granted." *Id.* We pointed out that Bankruptcy Rule 4005 expressly provides that "the plaintiff has the burden of proving the objection."

In addressing, first, his claim under § 727(a)(4), Sinkow contends that the Debt-ors have "inaccurately and untruthfully listed their expenses and their assets and have manipulated the valuation of whatever assets they have to precisely coincide with permitted exemptions." Brief in Support of Motion of Adolph E. Sinkow to Dismiss Chapter 7 Proceeding Pursuant to Sections 707(a) and 105(a) of the Bankruptcy Code and Complaint Objecting to Discharge Under Section 727 of the Bankruptcy Code (hereinafter referred to as "Sinkow's Brief), at 13. We find, however, that the Debtor's explanations, while perhaps not in direct coincidence with our sense of values, were both accurate and truthful, and that the creditors presented no evidence to the contrary.

■ In order to prevail on an objection to discharge based on § 727(a)(4), the objecting creditor must prove not only that the debtor did one of the acts recited in subsections (A) through (D), but also that the debtor did so with fraudulent intent and that the debtor's actions were material to the course of the bankruptcy case, by clear and convincing evidence. *Somerville*, 73 B.R. at 835; and *Woerner*, 66 B.R. at 971–72. Thus, in *Somerville*, although we found the debtor's testimony, both as a whole and in numerous specifics, lacking in credibility, we found that the creditor met his burden only as to the Debtor's totally inaccurate statements in his Chapter 13 Statement, as opposed to his inaccurate and evasive statements in his Chapter 7 schedules and at his § 341 meeting. 23 B.R. at 835–37.

■ Here, we note that Sinkow waived his objections to the Debtors' claimed exemptions by failing to file same within thirty (30) days of the § 341 meeting. Bankruptcy Rule 4003(b). *See In re Grossman*, 80 B.R. 311, 312–14 (Bankr.E.D.Pa.1987). More importantly, nothing on the Schedules was proven to be inaccurate, let alone intentionally so stated, let alone material to the course of the bankruptcy according to any standard of proof, let alone by the demanding "clear and convincing evidence" standard.

In support of his allegations pursuant to §§ 727(a)(2) and (a)(5), Sinkow recites similar generalities regarding "concealed property ... inaccurate listings, ... manipulated valuations and exaggerated expenses" and "failure to account for assets," Sinkow's Brief, at 13–14, with no reference to specifics. Also, he presented no evidence to contradict the statements made by the Debtor, which we found credible.

■ In *Somerville*, we noted that, to succeed on a § 727(a)(2) claim, a creditor is obliged to prove either fraud or an intention to hinder or delay a creditor in transferral, removal, etc., of property. 73 B.R. at 834. There, we rejected the creditor's § 727(a)(2) claim because he failed to show the actual value of horses which the debtor allegedly gave away because they were of little or no value, despite our doubts about the debtor's credibility. *Id.* Here, we have no specifics of any property disposed of under any questionable circumstances, let alone the value of same. "Exaggerated expenses" are the only element even arguably proven, and this element has no bearing on § 727(a)(2). It is clearly only concealment or destruction of assets which justifies denial of discharge on the basis of this Code section, not unwise but disclosed waste of same.

Regarding § 727(a)(5), as we stated in *Somerville*, 73 B.R. at 837, "the objector must produce more than merely an allegation that the Debtor has failed to explain losses ... e.g., the objector must produce some evidence of the disappearance of substantial assets or of unusual transactions." Here, it appears that the Debtor suffered the loss of the proceeds of Sinkow's loan in investments in his business, which Sinkow ultimately recouped by purchasing the business at a sheriff's sale. Sinkow produced no evidence of any specific assets lost, let alone proof of suspicious disappearance of assets. It also appears that no equities whatsoever support this claim, since Sinkow himself has obtained possession of the assets formerly belonging to the Debtor, and that it thus appears oppressive for Sinkow to even raise such a claim.

In evaluating Sinkow's adversary proceeding, we therefore conclude that it is totally without merit and could be classified as frivolous. This lack of factual merit carries over to the motion to dismiss, although the legal issues presented by that matter are less clearly settled. Our belief that addressing same would be helpful in clarifying the applicable legal principles was our principal reason for not simply deciding this case from the bench in the Debtors' favor.

The principal statutory provision invoked by the creditors in their motion to dismiss is subsection (a) of 11 U.S.C. § 707, the entire text of which is as follows:

§ 707. Dismissal.

(a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees or charges required under chapter 123 of title 28; and

(3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

(b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

■ We addressed this statutory provision only once before, in *In re Geller*, 74 B.R. 685 (Bankr.E.D.Pa.1987), where we had before us a request for a voluntary dismissal of a Chapter 7 and a related Chapter 11 case. There, we established, in a case presenting unappealing slumlord-debt-

ors, that we would grant such voluntary dismissal motions "in all but extraordinary situations." *Id.* at 690. However, given the policy against denying debtors the "fresh start" which bankruptcy accords to all eligible individuals, *cf. In re Zawisza,* 73 B.R. 929, 930, 933–34 (Bankr.E.D.Pa.1987), and the policy of assuring that the bankruptcy does in fact protect debtors from oppression at the hands of powerful creditors, *see Woerner, supra; cf. In re Woods,* 69 B.R. 999, 1000–01 (Bankr.E.D.Pa.1987), we clearly must decide motions filed by creditors seeking to involuntarily dismiss cases on a completely different basis. A case should not be involuntarily dismissed unless the moving party makes a very strong factual and legal basis to justify such a harsh disposition.

The Code provision primarily relies upon by the creditors here, § 707(a), recites but three specific instances of conduct justifying dismissal, admittedly none of which are applicable here. Despite an apparent statement by former Chief Judge Goldhaber in *In re Yancey,* 46 B.R. 621, 623 (Bankr.E.D. Pa.1985), that the specific instances set forth in § 707(a) are *exclusive,* we will accept the creditors' argument that the term "cause," in § 707(a), means something in addition to the specific instances recited.

■ Sinkow posits that either the Debtors' selective payments to certain creditors, in particular their mortgagees and the IRS; their "substantial abuse" of Chapter 7 in light of their excessive expenditures; and their lack of "good faith" constitute the requisite "cause" referred to in § 707(a). Corr emphasizes, with Sinkow, the Debtors' alleged manipulation of their schedules to maximize exemptions, and adds their contemplation of filing a "Chapter 20" bankruptcy as basis to justify dismissal.

■ Several of these objections can be summarily disposed of at the outset. Postpetition payments to any creditors, selectively or otherwise, by a Chapter 7 debtor are authorized by 11 U.S.C. § 524(f). Prepetition selectivity, not in issue here, defused by 11 U.S.C. § 547, is clearly not a basis for dismissal. Nor is "manipulation" of one's property to maximize exemptions,

i.e., exemption planning, forbidden by the Code, except as defused by 11 U.S.C. §§ 544–49. Again, we note that, having waived their opportunity to file objections to the Debtors' claims of exemptions, the creditors will not be heard on this issue at this juncture.

The creditors have not cited, nor has our research uncovered, any reported case where a Chapter 7 case was dismissed on any basis which could reasonably be classified as "substantial abuse" or "lack of good faith" except *In re Khan,* 35 B.R. 718 (Bankr.W.D.Ky.1984), which involved a pre–1984 Code amendment case and which was reversed and remanded at 751 F.2d 164 (6th Cir.1984).

This paucity of authority is not surprising. In both the House and Senate Reports on the Code in 1977 and 1978, discussing § 707 prior to the amendment to it to add § 707(b) in 1984, it was stated:

> The section does not contemplate, however, that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal. To permit dismissal on that ground would be to enact a non-uniform mandatory Chapter 13, in lieu of the remedy of bankruptcy. H.R.Rep. No. 595, 95th Cong., 1st Sess. 380 (1977); S.Rep. No. 989, 95th Cong., 2nd Sess. 94 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5880, 6336.

*See* 4 COLLIER ON BANKRUPTCY, ¶ 707.03, at 707–4 to 707–5 (15th ed. 1987). Thus, with sometimes considerable regret, courts have refused to dismiss Chapter 7 cases filed by debtors far better financially situated than the Debtors here on the basis of "substantial abuse." *See In re Goulding,* 79 B.R. 874 (Bankr.W.D.Mo.1987) (debtor had an income of $12,000.00 per month, excess income of $5,000.00 per month, and was due to receive the corpus of a $200,000.00 spend-thrift trust in about two months); and *In re Kragness,* 63 B.R. 459, 461–62 465–66 (Bankr.D.Or.1986) (wife-debtor was recipient of almost $250,-000.00 in trust benefits).

■ We believe that the parameters of § 707(b), enacted by Congress in 1984,

tightly establish the limits to which a "substantial abuse" analysis can be successfully advanced as a ground to dismiss a Chapter 7 case. The proceeding cannot be initiated "at the request or suggestion of any party in interest," clearly to avoid the potential of oppression and harassment from disgruntled creditors, but only by the court on its own motion or, per a 1986 Code amendment, by motion of the United States Trustee. The debts in the case must be "primarily consumer debts," indicating a perhaps unwarranted but nevertheless clear exemption for the ruined businessperson. Finally, even where a § 707(b) proceeding is properly initiated and prosecuted against a debtor with primarily consumer debts, there is a statutory "presumption in favor of granting the relief requested by the debtor," i.e., in favor of granting a discharge and denying a § 707(b) motion. Hence, any close calls are to be made in favor of the debtor.

Our Court of Appeals, in *In re Christian*, 804 F.2d 46, 48–49 (3d Cir.1987), negated any possible contention that a creditor has statutory standing to commence a § 707(b) proceeding. The Court declined from ruling upon the issue of whether a creditor's motion "tainted" the subsequent consideration of a § 707(b) motion in a given case. Some bankruptcy courts, while threatening sanctions against creditors who provided "suggestions" of cases appropriate for § 707(b) consideration to the court, have refused to decline to consider such motions under § 707(b) on their merits even though their initiation was "suggested" by creditors. *In re Campbell*, 63 B.R. 702, 705–06 (Bankr.W.D.Mo.1986); and *In re Hudson*, 56 B.R. 415, 420–21 (Bankr.N. D.Ohio 1985), *case dismissed*, 64 B.R. 73 (Bankr.N.D.Ohio 1986).

With all due respect to the concerns expressed by the *Campbell* and *Hudson* courts that bankruptcy judges need all the help that they can get in ferreting out potential cases for § 707(b) dismissals, and the threats of sanctions against lenders who improperly attempt to circumvent the § 707(b) prohibition on creditor initiation of "substantial abuse" dismissals by these courts, we do not see how the failure to

conclude that such creditor initiation must be found to taint a "substantial abuse" proceeding can be squared with § 707(b). This is especially so in light of the 1986 amendment to § 707(b), which, for the first time, allow the United States Trustee to initiate § 707(b) motion. In making the 1986 amendment, it thus appears that Congress specifically designated the United States Trustee as the sole help-mate to bankruptcy judges in ferreting out potential § 707(b) motions. Allowing Creditor in-put was, apparently, specifically rejected. We doubt that, in light of the 1986 amendment to § 707(b), the *Campbell* or *Hudson* courts would have reached the same result. In any event, it is our view that, given the 1986 amendment to § 707(b), the creditors' "suggestion" that the case is appropriate for § 707(b) dismissal, since it was prior to a motion by the United States Trustee or our own actions, *does* taint the proceeding and foreclose a § 707(b) dismissal on the merits.

The creditors here go even further than the *Campbell* and *Hudson* courts in arguing that their initiation of the "substantial abuse" issue is irrelevant. Sinkow argues that the court can simply transpose a creditor's motion under § 707(a) into a § 707(b) inquisition, presumably of even a debtor, like the Debtors here, whose debts are not primarily consumer debts. Such an argument is properly rejected by the court in *In re Cecil*, 71 B.R. 730, 733 (Bankr.W.D.Va. 1987). The creditors' argument must fail, for it suggests that the limitations upon dismissals for "substantial abuse" written into § 707(b) by Congress can be and should be easily circumvented. If a court could transform a § 707(a) motion into a § 707(b)-type inquiry, the limitation on creditor-initiation expressly provided for in § 707(b) would be eviscerated. Following the creditors' reasoning, the limitation of application of § 707(b) to debtors whose debts are "primarily consumer debts" would simply be written out of the Code.

■ We should further observe that, even if we were able to transform this proceeding into a § 707(b) motion, which we hold that we cannot do, we would not

dismiss this particular case on the basis of § 707(b). The debts in issue are not consumer debts, and we totally reject the argument of Corr that we can reallocate the Debtors' debts from the form in which they actually existed on the date of filing because the Debtors purportedly paid consumer debts to avoid the consumer-debt requirement of § 707(b). Given the presumption in favor of the Debtors expressly set forth in § 707(b), we would not be inclined to dismiss the case solely because we believed that the Debtors were ill-advised in sending their children to private schools and in renting a Mercedes, the only expenses in their budget which strike us as unnecessary. Simply put, these circumstances lack sufficient weight to justify a § 707(b) dismissal.

The only remaining basis for dismissal asserted by the creditors is the Debtors' purported "lack of good faith" in filing their Chapter 7. At the outset, we note that no case supporting a dismissal on this ground except the subsequently-reversed *Khan* case is cited. The only cases supporting the creditors' assertion that the Debtors' "good faith" is even a consideration in Chapter 7 cases are the decisions in *Kragness, supra,* 63 B.R. at 465; and *In re Bingham,* 68 B.R. 933, 935 (Bankr.M.D.Pa. 1987).

Citing the decision of present Chief Judge Twardowski of this court in *In re Flick,* 14 B.R. 912, 916 (Bankr.E.D.Pa. 1981), we held in *In re Ford,* 78 B.R. 729, 733 (Bankr.E.D.Pa.1987), that, as to a Chapter 13 case, " 'there is no requirement that the petition be *filed* in good faith ... there appears only a requirement that the *plan* be *proposed* in good faith,' " and "that 11 U.S.C. § 1307(c) is the only statutory basis which a creditor can evoke to attempt to obtain dismissal of a case." Of course, if a debtor is unable to propose a plan in good faith, as is expressly required by 11 U.S.C. § 1325(a)(3), dismissal pursuant to §§ 1307(c)(1), (2), or (5) may follow.

Sinkow argues that numerous Chapter 11 cases have found the "cause" which is a basis for dismissal in § 1112(b), comparable to that in § 707(a), sufficient to establish a "good faith" requirement in Chapter 11 filings, and therefore we should find a similar "good faith" requirement here. This court has recognized at least a limited "good faith" requirement in Chapter 11 cases in *In re Smith,* 77 B.R. 496, 500–01 (Bankr.E.D.Pa.1987); and *In re Clinton Centrifuge, Inc.,* 72 B.R. 900, 903–08 Bankr.E.D.Pa.1987).

However, as the *Kragness* court points out, 63 B.R. at 465, "[a] different level of conduct may be required for debtors in a Chapter 7 liquidation where all non-exempt assets are surrendered to a trustee for liquidation as opposed to Chapter 11 and Chapter 13 cases where the debtor normally remains in possession of non-exempt assets." Thus, there may be a real distinction between Chapter 7 and Chapter 11 cases as to an implicit requirement of "good faith." We must unfortunately part with Judge Gibbons' reasoning in *Bingham.* The Court of Appeals decision cited by him in support of this principle, *In re Holi–Penn, Inc.,* 535 F.2d 841, 844 (3d Cir. 1976), was a case under Chapter X of the predecessor Bankruptcy Act, which included a specific requirement that the petition be filed in good faith. 5 COLLIER ON BANKRUPTCY, ¶ 1112.03, at 1112–24. The other cases cited in *Bingham* in support of this principle, *Furness v. Lilienfield,* 35 B.R. 1006, 1011–13 (D.Md.1983); and *In re Setzer,* 47 B.R. 340, 344–49 (Bankr.E.D.N.Y.1985), were, respectively, a Chapter 11 and a Chapter 13 case.

Furthermore, we are, at this point, uncertain that our holding in *Smith, supra,* that a "good faith" requirement should be read into § 1112(b), was correct. Chapter 11, like Chapter 13 (and, for that matter, Chapter 12, at 11 U.S.C. § 1225(a)(3)), contains only a requirement that a *plan* be *proposed* in good faith. 11 U.S.C. § 1129(a)(3). Applying the reasoning of *Ford* and *Flick, supra,* and observing that §§ 1112(b)(2), (3), (4), and (5) permit dismissal of a case in which no confirmable plan is presented within a reasonable timeframe, causes us to question whether there is any more reason to read any "good faith" requirement into § 1112(b) than

there is to read such a requirement into § 1307(c).

In any event, any concept of "good faith," even where it is applicable, should embrace only the narrow concepts of fraudulent misrepresentations or serious non-disclosures of material facts, per *Smith, supra;* and *In re Gathright,* 67 B.R. 384, 387–88 (Bankr.E.D.Pa.1986), *appeal dismissed,* 71 B.R. 343 (E.D.Pa.1987). It should *not,* as we indicated in *Gathright,* "address elements which are properly dealt with under separate provisions of the Code," 67 B.R. at 389, such as "substantial abuse," which is dealt with exclusively in § 707(b).

The assertion by Corr that the fact that the Debtors' contemplation of filing a Chapter 13 case subsequent to this Chapter 7 case could justify a dismissal of this case can be answered briefly in several ways. First, inquiry of a debtor's motivations for filing a bankruptcy are moralizing which "has little place in a bankruptcy court." *Gathright, supra,* 67 B.R. at 387. Secondly, it would be speculative, premature, and totally improper to dismiss a Chapter 7 case because it *might* be followed with a Chapter 13 case. The Chapter 13 case would surely have to appear before a case could be branded as part of a "Chapter 20" filing. Thirdly, "Chapter 20" filings have not been deemed per se improper. *See, e.g., In re Metz,* 820 F.2d 1495 (9th Cir. 1987); *In re Baker,* 736 F.2d 481 (8th Cir. 1984); and *In re Samuel,* 77 B.R. 520, 523 (Bankr.E.D.Pa.1987).

 Our foregoing analysis may raise a question as to what *is* within the scope of "cause," per § 707(a), in addition to the specific instances recited therein. We believe that included therein is a large category of conduct which expressly violates Code provisions, such as those recited in *Kragness,* 63 B.R. at 465, *e.g.,* failure of the debtor to perform the duties enumerated in § 521, or unreasonable delay. *Compare Smith, supra,* 77 B.R. at 501–03. Where the conduct of the debtor is ground for denial of a discharge, under § 727, cause for dismissal may exist. *Cf. In re Schwartz,* 58 B.R. 923 (Bankr.S.D.N.Y.

1986). Also, there may be instances where debtors unjustifiably fail to comply with specific orders of this court. If it is not already clear, we state that we expressly find no circumstances warranting the invocation of § 707(a) here.

Finally, sensing that § 707(a) is not sufficient to support their claim, the creditors ask this court to invoke 11 U.S.C. § 105(a) to support their otherwise unsupportable claims against the Debtors. In response, we reiterate our holding in *In re Metro Transportation Co.,* 64 B.R. 968, 974 (Bankr.E.D.Pa.1986), that invocation of § 105(a) should be reserved for a truly "extraordinary set of circumstances," most commonly by debtors to extend the scope of the automatic stay. *See In re Monroe Well Service, Inc.,* 67 B.R. 746, 750–53 (Bankr.E.D.Pa.1987); and *Metro Transportation, supra,* 64 B.R. at 973–75. It is not to be employed as a loose cannon which is to be pointed in the direction of a debtor whose values do not coincide precisely with those of the court.

Furthermore, section 105(a) requires on its face that it be invoked only when "necessary or appropriate to carry out the provisions of this title." Use of that section here would run counter to the underlying principle that debtors are to be protected from oppression and harassment from their creditors. Our assessment of the instant adversary proceeding and motion is that they constitute engines of oppression and harassment directed against the Debtors. Given our inability to find any basis to grant relief to the creditors on any level, we question the good faith of the creditors in maintaining this action more so than that of the Debtors in maintaining their bankruptcy case.

We therefore have no hesitation in incorporating our allowance of reasonable expenses incurred by the Debtors due to the continuance of this matter from the original December 10, 1987, hearing date, as per our Order of December 11, 1987, in the Order.