**In re SKY GROUP INTERNATIONAL, INC., Debtor.**

**Bankruptcy No. 89–2622.**
**Motion Nos. 89–6683M to 89–6685M.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Dec. 13, 1989.

Owen W. Katz, Bernstein and Bernstein, P.C., Pittsburgh, Pa., for debtor.

Donald E. Malecki, Buchanan Ingersoll, P.C., Pittsburgh, Pa., for Union Nat. Bank.

James R. Huff, II, Sullivan, Forr, Stokan & Huff, Altoona, Pa., for petitioning creditors.

Emil Hirsch, Thomas, Hirsch & Albert, Washington, D.C., for Asher J. Sky.

Alan B. Gordon, Sable, Makoroff & Libenson, Pittsburgh, Pa., for First Federal Sav. Bank of Western Maryland.

Com. of Pa., Dept. of Revenue, Dept. of Labor and Industry, Robert C. Edmundson, Pittsburgh, Pa.

Stephen I. Goldring, Office of U.S. Trustee, Pittsburgh, Pa.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court are a number of motions by Union National Bank of Pittsburgh (hereinafter "UNB"), to-wit:

(1) Motion For Relief From Stay (filed at Motion No. 89–6685M);

(2) Motion To Dismiss Involuntary Petition Filed Under Chapter 7 (filed at Motion No. 89–6683M); and

(3) Motion For Declaration With Respect To Property Of The Estate (filed at Motion No. 89–6684M).

For the reasons set forth below, we determine that:

(1) UNB is adequately protected;

(2) the involuntary petition was not filed in bad faith; and

(3) property transferred to UNB pursuant to a deed was property of Debtor at the time of the filing of the involuntary petition.

In addition, it was uncontroverted at the November 29, 1989 hearing, that all elements necessary to a determination that relief should be granted in this involuntary petition were found in this case. Accordingly, an Order granting Debtor relief under Chapter 7 of the Bankruptcy Code will be and hereby is entered pursuant to 11 U.S.C. § 303(b).

### I.

#### Factual Background

An involuntary petition under Chapter 7 of the Bankruptcy Code was filed against Sky Group International, Inc. (hereinafter "Debtor") on October 4, 1989 by Ralph J. Albarano & Sons, Inc., Cirrus Investment Corp., Michael Bottge, and Herb Zukerman (hereinafter "Petitioning Creditors"). Debtor is owned and controlled by Asher J. Sky (hereinafter "Sky").

Debtor had acquired the Bedford Springs Hotel and adjacent property (hereinafter "Hotel") from Bedford Springs Hotel, Inc., which entity was partially owned and con-

trolled by Sky, and which previously had been involuntarily placed in bankruptcy in this Court in *In re Bedford Springs Hotel, Inc.*, at Bankruptcy No. 88–0589. Plan confirmation in the *Bedford Springs* case occurred on January 25, 1989.

The acquisition of the Hotel occurred pursuant to an Assumption Agreement between Debtor and UNB executed on February 28, 1989.

Debtor was required under the terms and conditions of the Assumption Agreement to assume all of Bedford Springs Hotel, Inc. liabilities to UNB and to pay all outstanding secured indebtedness to UNB by September 30, 1989.

A Deed in Lieu of Foreclosure with respect to the Hotel was executed by Debtor and placed in escrow. In the event that Debtor defaulted on its obligation to pay all outstanding secured indebtedness to UNB by September 30, 1989, UNB was entitled to receive the Deed from the escrow agent.

Debtor failed to pay all outstanding secured indebtedness to UNB by September 30, 1989.

On October 2, 1989, UNB assumed, at its own expense, responsibility for maintenance and security of the Hotel. Without knowledge of the involuntary petition, which had been filed earlier that same day, UNB took possession of the Deed from the escrow agent on October 4, 1989. The Deed was duly recorded the next day.

## II.

### (A) *Relief From Stay*

An oral Order was entered by this Court at the conclusion of the November 29, 1989 hearing on the matter denying UNB's Motion For Relief From Stay. The purpose of this discussion is to state in greater detail the reasons for the denial.

11 U.S.C. § 362(d) provides as follows:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

■ UNB contends that it should be granted relief from stay because Debtor waived the stay. Paragraph 8 of the Assumption Agreement provides as follows:

*Relief from Stay.* In the event that a proceeding under any bankruptcy or insolvency law is commenced by or against Sky Group and an order for relief is entered as a result of such petition, Sky Group hereby consents to relief from the automatic stay imposed by 11 U.S.C. § 362 to allow Lender [UNB] to exercise its rights and remedies hereunder with respect to the Debtor's property.

The contention that this "waiver" is enforceable and self-executing is without merit.

The protection accorded as a result of filing a bankruptcy petition is specifically designated, *per* 11 U.S.C. § 362(a), as the "automatic" stay. *See In re Clark,* 69 B.R. 885 (Bankr.E.D.Pa.1987). This alone would suggest that the stay goes into effect *without regard* to any further conduct by the debtor or its creditors. It can be compromised only when there exists good reason to do so. *In re Clark, supra* at 889.

The legislative history makes it clear that the automatic stay has a dual purpose of protecting the *debtor and all creditors* alike:

It gives the *debtor* a *breathing spell* from his creditors. It stops all collection efforts, all harassment, and all foreclosure action. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

*The automatic stay also provides creditors protection.* Without it, certain

creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. *Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.* (Emphasis added.)

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 340 (1977); *reprinted in* 1978 U.S.Code Cong. & Ad.News, 5787, 5963, 6296–6297.

■ To grant a creditor relief from stay simply because the *debtor* elected to waive the protection afforded the debtor by the automatic stay ignores the fact that it also is designed to protect *all creditors* and to treat them *equally.* The orderly liquidation procedure contemplated by the Code would be placed in jeopardy, especially where (as here) none of the creditors who brought the involuntary petition was a party to the Agreement in which debtor allegedly waived its right to the automatic stay.

Although waiver of a stay by the debtor apparently was possible under the old Bankruptcy Act, such a waiver is not self-executing under the Bankruptcy Code. Relief from stay must be *authorized by the Bankruptcy Court. See Assoc. of St. Croix Condo. Owners v. St. Croix Hotel,* 682 F.2d 446 (3rd Cir.1982). The Court has not granted relief from stay in this case nor does it have a present intention to do so.

■ UNB further contends that it should be granted relief from stay in order to enable it to exercise its rights and remedies under the Assumption Agreement because: (1) it is not adequately protected; and (2) Debtor has no equity in the property. These contentions will be considered in order.

The total secured indebtedness due and owing to UNB as of the date of the hearing is $5,116,170.00. The evidence presented at the November 29, 1989 hearing overwhelmingly indicates that the value of the property is substantially greater than this amount. The moving party offered no credible affirmative proof to the contrary. To the contrary, the Court takes judicial notice of the fact that UNB in the *Bedford Springs Hotels, Inc.* case, specifically at Motion No. 88–7146M, Motion For Adequate Protection or Alternatively, Relief From Stay, referred to appraisals indicating a fair market value of $7.5 million of the property in its present condition. At the request of UNB the hearing on this matter, which was scheduled for December 9, 1988, was postponed to January 25, 1989, the date scheduled for hearing on the plan confirmation. As the plan was confirmed, UNB's motion for relief was deemed moot.

An on-site auction of the property was conducted on September 21, 1989. The highest bid for the Hotel, which ultimately was rejected by Debtor, was $5.3 million. This bid, even if taken as a reliable indication of the value of the property, is greater than the amount due and owing to UNB.

Even this, however, is not truly indicative of the value of the property. There is reason to believe that it is worth substantially more. An auction of property which is distressed and embroiled in a bankruptcy proceeding is not conducive to realizing the highest value for it.

This Court previously had determined in connection with *In re Bedford Springs Hotel, Inc.* that the same property was worth $7.5 million. The moving party participated in those proceedings. There is no reason to conclude that the property is worth less today than it was ten (10) months ago. To the contrary, UNB has taken over the responsibility of maintaining the property in order to protect its interest in it.

In short, based upon the evidence submitted to the Court, the value of the property appears to be substantially greater than the total secured indebtedness due and owing to UNB. Since it's interest is adequately protected by this "equity cushion", UNB is not entitled to relief from stay pursuant to 11 U.S.C. § 362(d)(1).

UNB also is not entitled to relief from stay pursuant to 11 U.S.C. § 362(d)(2), as it

has not met its burden of proving that the Debtor has no equity in the property.

Sky testified, and the Court finds, that the present *total* secured indebtedness of Debtor with respect to the property is approximately $8 million.

UNB has failed to show that the property is less than this amount. To the contrary, the only credible evidence offered at trial indicates that it is worth considerably more than $8.75 million. A.D. Johnson, of President's Development Corp., expressed an intention to make a *bona fide* offer of $10 million for the property. In addition, Franklin Bolling, who has been retained by Debtor to sell the property, stated that the property can be sold for approximately $8.75 million within ninety (90) days.

(B) *Dismissal of Involuntary Petition*

UNB argues that the present involuntary petition should be dismissed pursuant to 11 U.S.C. § 707(a) because it was filed in bad faith. According to UNB, the petitioning creditors were "induced" to file in light of representations by Sky that they would not receive payment unless they filed a bankruptcy petition to prevent UNB from obtaining the Deed. UNB alleges that Sky's intention was to deprive UNB of its rights and remedies under the Assumption Agreement agreed to and executed in *Bedford Springs Hotel, Inc.*.

■ Good faith is an implicit jurisdictional requirement for the bringing of a Chapter 7 case. *See In re Khan*, 35 B.R. 718 (Bankr.W.D.Ky.1984). A showing of bad faith can result in dismissal under 11 U.S.C. § 707(a). *See In re Setzer*, 47 B.R. 340 (Bankr.E.D.N.Y.1985).

■ "Good faith" is not defined in the Code. It has, however, been held to· require a showing of honest intention. *See, e.g., Johnson v. Vanguard Holding Corp.*, 708 F.2d 865 (2nd Cir.1983). Such a determination can be made only on an *ad hoc* basis, *see In re Chase*, 28 B.R. 814 (Bankr. D.Md.1983), and depends on whether any abuses of the provisions, purpose, or spirit of bankruptcy law have occurred. *See In re Vlahakis*, 11 B.R. 751 (Bankr.M.D.Ga.

1981). Once the question of good faith has been put in issue, the party bringing the bankruptcy petition has the burden of proving that the petition was brought in good faith. *See In re Holi–Penn, Inc.*, 535 F.2d 841 (3rd Cir.1976).

■ The involuntary petition in this case was not brought in bad faith. Although the evidence does indicate that the filing of the involuntary petition was the result of certain representations by Sky, there is nothing indicating that Sky "induced" or "orchestrated" the filing. Looking at the facts from Debtor's worst perspective, it appears that one of the petitioning creditors called Sky to inquire as to the delay in paying his bill. Sky advised said creditor as to a lack of cash flow and in the course of the conversation allowed him to know that there would be no assets from which to pay creditors if UNB took ownership of the sole asset of the company. At the creditor's request, Sky also gave him a list of creditors. The fact that Sky did these things does not support the inference that the filing of the petition was the result of a scheme or contrivance.

Also, the evidence does not show that the petition was filed with the intention of depriving UNB of its right to receive the Deed in accordance with the Assumption Agreement. The most plausible interpretation of the evidence is that the involuntary petition was filed because certain creditors were fearful that they, as unsecured creditors, would receive nothing if UNB were to take the Deed. This is not an abuse of bankruptcy law.

UNB also contends that this case should be dismissed pursuant to 11 U.S.C. § 305(a)(1). This contention is entirely without merit.

11 U.S.C. § 305 provides in pertinent part that:

(a) The Court, after notice and a hearing, may dismiss a case under this title ... at any time if—

(1) the interests of creditors and the debtor would be better served by such dismissal ...;

Since dismissal pursuant to this section is not reversible on appeal or otherwise, *See* 11 U.S.C. § 305(c), such relief should be granted only in an egregious situation. *In re O'Neil Village Personal Care Corp.*, 88 B.R. 76 (Bankr.W.D.Pa. 1988). Dismissal under this provision rests in the sound discretion of the Court and must be made on a case-by-case basis. *Id.* at 79. The primary consideration in determining whether dismissal pursuant to 11 U.S.C. § 305(a)(1) is appropriate is whether it would serve the best interest of *both* debtor *and* creditors to do so. *Id.* at 79; also, *In re A & D Care, Inc.*, 90 B.R. 138 (Bankr.W.D.Pa.1988). By implication, dismissal would *not* be appropriate where it would be in the best interest of only one creditor and would be detrimental to debtor and all other creditors.

Dismissal pursuant to 11 U.S.C. § 305(a)(1) would not be appropriate in this case.

As has been indicated, the property in question is Debtor's sole asset of any significance. It appears that the property presently has sufficient value that the claims of *all* creditors, both secured and unsecured, would be substantially, if not entirely, satisfied if the property is liquidated in a bankruptcy proceeding.

UNB is asking this Court to dismiss the present involuntary petition so that it can take title to property presently worth more than $8 million in order to satisfy a debt which is slightly in excess of $5 million. Although dismissal of this case pursuant to 11 U.S.C. § 305(a)(1) unquestionably would be in the best interest of UNB, no other interested party would benefit. Dismissal would not be in the best interest of Debtor and its remaining creditors, as well as the second and third mortgagees of the property, all of whose claims almost certainly would remain unsatisfied if the case is dismissed. In effect, UNB would enjoy a windfall at their expense. Such a result would be wholly at odds with the purpose of 11 U.S.C. § 305(a)(1) and of the Bankruptcy Code in general.

(C) *Property of the Estate*

Finally, UNB seeks a declaration that Debtor had no legal or equitable interest in the property at the time that the involuntary petition was filed. According to UNB, Debtor had no legal or equitable interest in the property *because* it had placed the Deed in escrow.

UNB's Motion will be denied for the reasons set forth below.

To begin with, UNB's motion is procedurally defective. In effect, UNB is seeking a declaration that it is entitled to receive certain property. A proceeding for a declaratory judgment should be brought as an adversary proceeding. *See* Bankruptcy Rule 7001.

Although UNB's motion *may* be dismissed with instruction to file an appropriate adversary complaint, *see In re Ace Industries, Inc.*, 65 B.R. 199 (Bankr.W.D. Mich.1986), it would be more appropriate to rule at this time on the merits of the matter. Both UNB and Debtor were permitted to present all of the evidence on this question that they wished to present. To require UNB to file an adversary complaint would be wasteful of scarce resources.

UNB's contention that Debtor had no legal or equitable interest in the property at the time of the filing of the involuntary petition because it had placed the Deed in escrow is without merit.

Section 541(a) of the Bankruptcy Code specifies what property shall comprise a debtor's estate. Most importantly, the estate includes "... all legal or equitable interests of the debtor in property as of the commencement of the case". 11 U.S.C. § 541(a)(1).

The scope of this provision is broad and pervasive. *See U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). According to the legislative history:

It includes *all kinds of property,* ... tangible or intangible, ... and all other forms of property currently specified in § 70a of the Bankruptcy Act ... The debtor's interest also includes "title" to property, which is an interest, just as are

a possessory interest or leasehold interest, for example. (Emphasis added.) H.R.Rep. No. 595, 95th Cong., 1st Sess., 367 (1977), U.S.Code Cong. & Admin.News. 1978, pp. 5787, 6323.

The underlying purpose of this provision "is to bring into the estate *all* interests of a debtor in property as of the date the case is commenced." *Matter of Jones,* 768 F.2d 923 (7th Cir.1985). The estate's rights are limited to those had by the debtor. "Whatever rights a debtor had at the commencement of the case continue into bankruptcy—no more, no less." *Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1713 (7th Cir.1984).

■■■■ Whether a debtor in fact has an interest in property and, if so, the precise nature of that interest, are not defined in the Bankruptcy Code. One must resort to non-bankruptcy law to make such determinations. 4 *Collier on Bankruptcy* (15th ed. 1989), § 541.02(a) at 541.10–541.11. In most instances, this necessitates the application of *state* law, both to determine whether property is an asset of a debtor, *In re K & L Ltd.,* 741 F.2d 1023, 1030 n. 7 (7th Cir.1984), and to determine the nature of those property rights. *Butner v. U.S.,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

An escrow is a deed (or other instrument) importing an obligation deposited with a third party to be held by that party until the performance of a condition or the happening of a specified event and then delivered to take effect. *See, Angelcyk v. Angelcyk,* 367 Pa. 381, 80 A.2d 753 (1951).

It is not disputed that Debtor had both a legal and an equitable interest in the property *before* it executed the Deed and deposited it with the escrow agent.

Moreover, Debtor did *not* relinquish its legal or equitable interest in the property merely by virtue of it's executing the Deed and depositing it with the escrow agent. Although the depositor *loses control of the instrument* placed in escrow, it *retains title* thereto *until* performance of the condition or the happening of the event upon which delivery is to be made by the escrow agent. *See, Paul v. Kennedy,* 376 Pa. 312, 102 A.2d 158 (1954).

Title could *not* have passed to UNB *until* the Deed was *actually delivered to it* by the escrow agent. *See, Weisenberger v. Huebner,* 264 Pa. 316, 107 A. 763 (1919). ("An escrow 'is a deed delivered to a stranger, to be by him delivered to the grantee upon the happening of certain conditions, *upon which last delivery the transmission of title is complete'*.") (Emphasis added.) (Cite omitted.) Since delivery of the Deed to UNB did not occur until *after* the involuntary petition had been filed, it follows that Debtor still retained both a legal and equitable interest in the property at the time of filing and, consequently, that the Hotel is property of Debtor's estate. *See* 11 U.S.C. § 541(a)(1).

An appropriate Order will be issued.

## ORDER OF COURT

AND NOW at Pittsburgh in said District this 13th day of December, 1989, in accordance with the foregoing Memorandum Opinion of this same date, it is hereby ORDERED, ADJUDGED and DECREED that Debtor is granted relief under Chapter 7 of the Bankruptcy Code pursuant to 11 U.S.C. § 303(h).

IT IS FURTHER ORDERED that UNB's Motion To Dismiss Involuntary Petition Filed Under Chapter 7 be and is DENIED.

IT IS FURTHER ORDERED that UNB's Motion For Declaration With Respect To Property Of The Estate be and is DENIED. In addition, it is ADJUDGED and DECREED that Debtor had a legal and equitable interest as of the commencement of this case in the property identified in a Deed in Lieu of Foreclosure and deposited in escrow on February 28, 1989.