In re MacFARLANE WEBSTER ASSOCIATES, Debtor.

Robert M. FISHER, Trustee of the Estate of MacFarlane Webster Associates, Plaintiff,

v.

BANK LEUMI TRUST COMPANY OF NEW YORK and EOR Two of New York Inc., Defendant.

Bankruptcy No. 89B–11438.
Adv. No. 89–6444A.

United States Bankruptcy Court, S.D. New York.

July 31, 1990.

Leo Fox, New York City, for trustee.

Parker, Chapin, Flattau & Kimpl by Aurora Cassirer, New York City, for Bank Leumi Trust Co. of New York and EOR Two of New York Inc.

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

Before the court is the motion of a senior mortgagee of MacFarlane Webster Associates ("MacFarlane Webster" or the "Debtor") seeking, *inter alia*, an order pursuant to section 707(a) of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (1988) (the "Code"), dismissing the instant chapter 7 bankrupt-

cy case commenced by the filing of an involuntary petition filed against the Debtor by a junior mortgagee. The assets of this estate consist of claims to avoid a pre-petition foreclosure by the senior mortgagee. *See, e.g., Durrett v. Washington Nat'l Ins. Co.*, 621 F.2d 201 (5th Cir.1980). Only the junior mortgagee would benefit were the foreclosure overturned. The junior mortgagee consented prepetition to the foreclosure sale. Permitting the bankruptcy case to be maintained under these unique circumstances would constitute an abuse of chapter 7. The motion is therefore granted.

I

The facts are largely undisputed. Macfarlane Webster acquired premises known as 40 West 45th Street, New York, New York (the "Premises") on April 18, 1985, Compl. ¶ 7, with funds borrowed from Bank Leumi Trust Company of New York (the "Bank" or "Bank Leumi"), Compl. ¶ 10; Ans. ¶ 5; Cassirer Aff. ¶ 3, Consol.Agrt. (Exh. B), Mortgage (Exh. D), Note (Exh. E). In consideration of those acquisition funds and additional construction funds, the Debtor executed promissory notes and mortgages to Bank Leumi in the combined sum of $10,931,000. *Id.*

When the Debtor subsequently experienced difficulty in making repayments, Bank Leumi commenced a foreclosure action against it. Cassirer Aff. ¶ 10, Notice of Pendency (Exh. J). The Bank agreed on July 16, 1987 to settle the action by extending the maturity date of the notes and permitting the Debtor to grant a junior mortgage in favor of Eagle SA Funding Company ("Eagle") in exchange for $2.5 million in new financing. Compl. ¶ 11; Ans. ¶ 6; Fox Aff., Modif. & Ext.Agrt. (Exh. C); Cassirer Aff. ¶ 11, Note (Exh. K).

Soon thereafter, the Debtor again defaulted in paying installments of interest and principal. Compl. ¶ 11; Cassirer Aff. ¶ 12. The Bank commenced a foreclosure action. Compl. ¶ 11; Ans. ¶ 6. Approximately six months later, the Bank, Eagle and the Debtor, among others, entered into a stipulation agreement. Cassirer Aff.

¶ 13, Stip. & Order dated 5/17/88 (Exh. M). As part of the agreement, the Bank promised not to pursue its foreclosure action against the Debtor for a four month period in exchange for a consent judgment of foreclosure and sale to be entered if the Debtor did not make payment on a date certain. *Id.* The consensual judgment of foreclosure and sale established the liability of the Debtor to the Bank. *Id.* Eagle, in writing, consented to it. *Id.*

The Debtor again defaulted; the Bank filed the judgment on January 31, 1989, some nine months later. Cassirer Aff. ¶ 14, Consent Judgment (Exh. N). It is alleged that during the Bank's moratorium, the Debtor made numerous unsuccessful attempts to sell the Premises, but none of the five offers it received exceeded $16 million. Compl. ¶¶ 17–21.

The referee appointed to sell the Premises advertised the time and place of the foreclosure sale, and served notice upon all parties in interest. Cassirer Aff. ¶ 15, Referee's Report (Exh. P). The Bank postponed the sale to allow the Debtor to negotiate a proposed joint venture agreement which would have provided funds to satisfy the debt owed to the Bank. *Id.;* Cassirer Aff. ¶ 15, Stip. (Exh. O); Compl. ¶ 22. The Debtor was not able to conclude the agreement, and the Bank re-noticed the sale. Compl. ¶ 22; Cassirer Aff. ¶ 16, Referee's Report (Exh. P).

Eagle, the Debtor, and approximately seven to ten people, attended the auction sale held on May 31, 1989. Cassirer Aff. ¶'s 17, 18; Compl. ¶ 13. The Bank made the winning bid of $9 million. Compl. ¶ 13; Cassirer Aff. ¶¶ 17, 18, Referee's Report (Exh. P).

Notwithstanding its having consented to the foreclosure sale, Eagle filed an involuntary Chapter 7 petition against the Debtor on June 20, 1989, prior to recordation of the referee's deed. Pl.'s Memo., p. 52; Defs' Memo., p. 7. The Debtor did not oppose the petition. On the Debtor's default, this Court entered an order for relief under the Bankruptcy Code in August 1989. The Bank's assignee, EOR Two of New York, Inc. ("EOR"), received and recorded the

referee's deed on June 23, 1989. Pl.'s Memo., p. 52; Defs' Memo., p. 7. On July 22, 1989, the referee filed his Report of Sale for confirmation. Cassirer Aff., Exh P. The state court held a hearing to confirm the foreclosure sale on November 30, 1989, Cassirer Aff. ¶ 24, Motion (Exh. T), and confirmed that sale on January 25, 1990, Cassirer Aff. ¶ 25, Order (Exh U). Although counsel to the Trustee sent a letter to the state court on behalf of the Trustee claiming that confirmation of the sale would violate the automatic stay, Fox Aff., Letter dated 12/1/89 (Exh. P), he has not pursued that objection, Cassirer Aff. ¶ 25.

The Trustee brought an adversary proceeding against the Bank and EOR, on November 13, 1989. Principally, the complaint seeks to void the foreclosure sale as a fraudulent transfer under sections 544(b), 548(a), 550(d) and 551 of the Code. It alleges that an appraisal of the Premises by the Debtor and offers made to the Debtor establish that the fair market value of the Premises at the time of the foreclosure sale ranged from $15 million to $16 million. Compl. ¶¶ 16–21. There is no indication in the record that the Premises have since appreciated in value.

Dividends payable in the bankruptcy case would be attributable to recovery from the Trustee's action. Only the Bank and Eagle would appear to be entitled to them if the action is successful. The Debtor's liability on its senior mortgage debt, as of the date of the sale, was $13,956,637.79, inclusive of all costs, Cassirer Aff., Referee's Report, p. 2 (Exh. P), Order (Exh. U), and, on the Eagle mortgage, as of the date of the Petition, in excess of $3.6 million, Pet. ¶ 1. Interest on the Bank's mortgage continues to accrue. Since the aggregate debt owed the Bank and Eagle would exceed the alleged fair market value of the collateral, Eagle is undersecured. 11 U.S.C. § 506(a).[1]

As affirmative defenses, the Defendants asserted that the foreclosure judgment was entered upon consent of all parties, including the Debtor and Eagle, that the Debtor was afforded fair consideration and reasonably equivalent value for the sale, *res judicata* and collateral estoppel, the doctrine of unclean hands, waiver and estoppel, and lack of standing. They then brought the instant motion to dismiss the chapter 7 case under section 707(a) or for abstention under section 305 of the Code and to dismiss the complaint for failure to state a claim upon which relief could be granted.

## II

Section 707(a) of the Code, 11 U.S.C. § 707(a), provides:

The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees and charges required under Chapter 123 of title 28; and

(3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on motion by the United States Trustee.

11 U.S.C. § 707(a). Although the examples provided concern debtor conduct such as causing unreasonable delay, the examples are illustrative only. H.R.Rep. No. 595, 95th Cong. 1st Sess. 380 (1977), U.S.Code Cong. & Admin.News 1978, p. 6336; S.Rep. No. 989, 95th Cong. 2d Sess. 84 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5870. The wording of the statute indicates that it covers both voluntary and involuntary cases, *compare* § 707(a)(1) *with* § 707(a)(3), that any party in interest can make such a motion except on the ground set forth in section 707(a)(3), and

---

**1.** In relevant part, section 506(a) provides

An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

11 U.S.C. § 506(a).

that cause lies in prejudice to a creditor such as the unreasonable delay set forth in section 707(a)(1).

### A

■ The language of the statute thus requires the bankruptcy courts to determine, on a case by case basis, whether an abuse constituting cause has occurred. *See In re Sky Group Int'l., Inc.*, 108 B.R. 86, 90 (Bankr.W.D.Pa.1989). The language of the statute easily accommodates a holding that maintaining a bankruptcy case is such an abuse in the extreme circumstance where the case was commenced by an undersecured junior mortgagee, who consented pre-petition to a foreclosure sale by a senior mortgagee, through the filing of an involuntary petition under section 303, 11 U.S.C. § 303, when the sole purpose of the bankruptcy case is to stop or avoid that sale with any benefit therefrom running only to the junior mortgagee. In such a case, a dividend will flow only to the senior and junior secured creditors. The senior secured creditor is prejudiced by the delay of the proceeding, notwithstanding having obtained the consent of the junior secured creditor to the foreclosure. The junior secured creditor is unfairly benefitted since it gave its consent.

### B

■ Interpreting section 707(a) to find abuse from pre-petition conduct of a petitioning creditor is, moreover, consistent with numerous cases decided under the former Bankruptcy Act, 11 U.S.C. §§ 1 *et seq.* (1972) (repealed), where the courts have not hesitated to prevent such abuse by precluding resort to bankruptcy.

Prior to 1938, the former Bankruptcy Act did not expressly preclude a creditor from commencing an involuntary case because of his prior conduct. The statute only explicitly required proof of an "act of bank-

ruptcy" on which the involuntary petition was based.[2] *See* 11 U.S.C. §§ 21(a, b) (1972) (repealed). Although not always clear in expressing which equitable doctrine provided the basis for preclusion under the Act, the courts nevertheless uniformly embraced such doctrines as release, estoppel, waiver, election of remedies, and *volenti non fit injuria* (one who consents is precluded from claiming injury resulting from that which is consented to, Blacks Law Dictionary 1412 (5th ed. 1979)).

In the seminal case *Moulton v. Coburn*, 131 F. 201 (1st Cir.1904), *cert. denied*, 196 U.S. 640, 25 S.Ct. 796, 49 L.Ed. 631 (1905), for example, a creditor who had assented pre-petition to an assignment for the benefit of creditors joined in an involuntary petition, alleging as an act of bankruptcy the assignment to which it had expressly assented. The First Circuit held that the creditor was estopped from joining in the petition because he had knowingly elected between rights under the assignment and rights under the Bankruptcy Act. 131 F. at 203. It observed that

> It must be assumed that the assenting creditor had knowledge of his rights under the Bankruptcy Act and voluntarily chose to assent to the terms of the assignment in preference to exercising his rights under the act.... [An] election results from his choice of rights which are inconsistent with the enforcement of rights under the Bankruptcy Act.... He has chosen between two rights, one of which is derived from an instrument in which a clear intention appears that he should not enjoy both.

131 F. at 203. Since, absent joinder, there remained fewer than three petitioning creditors and more than twelve unsecured creditors at the time of the filing, such that the requisite number of petitioning creditors was lacking, the First Circuit affirmed the district court's dismissal of the petition.

**2.** Under § 3(a) of the former Bankruptcy Act, 11 U.S.C. § 21(a), the following constituted "acts of bankruptcy": the bankrupt's concealment of his property; preferential transfers; permitting a creditor to obtain a lien on his property while he was insolvent and not vacating or discharging such a lien within a certain time; assignment for the benefit of creditors; receivership; admission in writing of inability to pay his debts and willingness to be adjudged a bankrupt. A petition could generally be filed against a person within four months after the commission of an act of bankruptcy. *See* 11 U.S.C. § 21(b) (1972) (repealed).

To be distinguished, noted the *Moulton* Court, were such cases as *In re Curtis*, 94 F. 630 (7th Cir.1899). In *Curtis*, the Seventh Circuit also recognized that creditors filing involuntary petitions under the former Bankruptcy Act were to be precluded from asserting their supposed rights in the bankruptcy if they had elected another inconsistent remedy such as an assignment by filing claims with the assignee. There, however, the court maintained the petition in bankruptcy because the record established that the assignment was fraudulent and that the election, therefore, was not made "with the full knowledge of the circumstances of the case, and of the right to which the person put to his election was entitled...." 94 F. at 632.

The Second Circuit, in *In re Goldman-Rosenzweig Co., Inc. (Amer. Woolen Co. v. Amer. Silk Mills, Inc.)*, 65 F.2d 390 (2d Cir.1933), precluded resort to bankruptcy in circumstances similar to those in *Moulton.* Upon learning of the difficulties of the alleged bankrupt, creditors of Goldman-Rosenzweig proposed that the bankrupt's business be liquidated; a new corporation be reorganized, the stock of which would be turned over to a committee of creditors as security; and the business be supervised by a creditors' committee. The bankrupt assented to this assignment. Thereafter, despite being fully advised of certain

wrongs of the bankrupt, including the destruction of some of its books, the creditors continued to liquidate under the assignment. Within four months of the assignment, the creditors filed a petition alleging preferential payments and assignment as acts of bankruptcy. The district court held that the petitioning creditors were estopped from so doing. The Second Circuit affirmed, stating that

> [C]reditors who voluntarily assent and participate in the general assignment for the benefit of creditors, in the absence of fraud or misrepresentations, are estopped from thereafter filing or becoming parties to a petition in bankruptcy.... [W]hen a creditor elects to deal with a deed of composition or arrangement as valid, instead of exercising his right to treat it as an act of bankruptcy or as void for non-compliance with the bankruptcy law, he is precluded from afterwards supporting a bankruptcy petition against the debtor.

65 F.2d at 391 (citations omitted).[3]

Recognizing the opportunity for abuse, Congress followed those cases and added section 59(h), 11 U.S.C. § 95(h), to the Act in 1938, 11 U.S.C. § 95(h) (1938) (repealed).[4] In *Dinerman v. Bowley & Travers, Inc. (In re Bowley & Travers, Inc.)*, 301 F.2d

---

**3.** *See also In re Lucey Mfg. Corp.*, 9 F.2d 313 (2d Cir.1925) (creditors participating in receivership proceedings cannot thereafter complain that payments by receivers were preferential and constituted acts of bankruptcy under the doctrine *volenti non fit injuria*); *Ohio Motor Car Co. v. Eiseman Magneto Co.*, 230 F. 370 (6th Cir.), *cert. denied*, 241 U.S. 673, 36 S.Ct. 724, 60 L.Ed. 1231 (1916) (filing claim in a receivership and receiving a dividend thereunder precluded recipient from joining in a bankruptcy petition which alleged the receivership and two preferential transfers under doctrines of waiver, election and estoppel because the receivership was nearly consummated when the matters were heard); *Utz & Dunn Co. v. Regulator Co.*, 213 F. 315 (8th Cir.1914) (assignees of creditors who approved assignment pre-petition and affirmatively acted thereunder were precluded from resorting to bankruptcy relief); *Simonson v. Sinsheimer*, 95 F. 948 (6th Cir.1899) (creditors were estopped who had filed claims under an assignment, asked for a reference, and waited over three months before filing the petition); *In re Romanow*, 92 F. 510 (D.Mass.1899) (by as-

senting to an assignment, creditors released their claims against the bankrupt and accepted claims under the assignment and cannot equitably repudiate that agreement). *See also* 3 J. Moore & L. King, *Collier on Bankruptcy* ¶ 59.38 (14th ed. 1977) for a discussion of these various theories, all based on the underlying notion that an involuntary bankruptcy case may not be maintained by a creditor who consented to the act of bankruptcy complained of.

**4.** Section 59(h) provided:

> A creditor shall not be estopped to act as a petitioning creditor because he participated in any prior matter of judicial proceeding, having for its purpose the adjustment or settlement of the affairs of the debtor or the liquidation of his property, or to allege such prior matter or proceeding as an act of bankruptcy, unless he has consented thereto in writing with knowledge of the facts, if any, which would be a bar to the discharge of the debtor under this Act.
> 11 U.S.C. § 95(h) (1938) (repealed).

464 (2d Cir.1962), the Second Circuit ruled that section 59(h) was framed negatively and designed to overrule only those cases which held that even creditors who merely participated in, and did not induce, assignment proceedings were precluded.[5] *Accord, Queen City Shoe Mfg. Corp. v. Commonwealth Last Co.,* 134 F.2d 422 (1st Cir.1943) and 3 J. Moore & L. King, *Collier on Bankruptcy* ¶¶ 59.36, 59.37 (14th ed. 1977). The court reasoned that the innocent creditor who consented in writing where the debtor acted in bad faith should not be precluded. *Queen City,* 134 F.2d at 423. Congress did not thereby eliminate the common law doctrine of estoppel or related equitable doctrines. 3 *Collier* ¶ 59.36. Rather, it left the courts at liberty to follow such doctrines subject only to the negative limitations of section 59h. *Dinerman,* 301 F.2d at 466; 3 *Collier* ¶ 59.36; *see also In re Thomas,* 211 F.Supp. 187, 191 (D.Colo.1962), *aff'd per curiam sub nom Thomas v. Youngstown Sheet & Tube Co.,* 327 F.2d 667 (10th Cir.), *cert. denied,* 379 U.S. 827, 85 S.Ct. 55, 13 L.Ed.2d 36 (1964); *In re Acorn Elec. Supply, Inc.,* 339 F.Supp. 785 (E.D.Va.1972) for a discussion of section 59(h); and *see* 12 J. Moore & L. King, *Collier on Bankruptcy* ch. 104 (14th ed. 1978) for a discussion of former Rule 104(b) which exemplified section 59(h).

In *Dinerman,* an insurance brokerage business was sold to the alleged bankrupt for cash and promissory notes. The sole stockholders of the bankrupt pledged their shares to the seller for payment on the notes. When the bankrupt defaulted on the notes and the sellers sought possession of the stock, the stockholders, as directors, voted to execute a general assignment for the benefit of creditors. One of the stockholders, also a creditor of the alleged bankrupt, then filed an involuntary petition against the bankrupt under the Act alleg-

ing the general assignment as the act of bankruptcy. The bankrupt, then under the sellers' control pursuant to the assignment, sought dismissal of the petition on the ground that a creditor, who in his role as a director and stockholder in the bankrupt, induces the bankrupt to make a general assignment for the benefit of creditors, should be precluded from filing a petition in bankruptcy alleging the general assignment as an act of bankruptcy. The court observed:

> A creditor who initiates or procures a general assignment makes a choice between bankruptcy and assignment proceedings.... It is not unfair to hold him to his choice by withholding from him the right to file a bankruptcy petition alleging the assignment which he induced as an act of bankruptcy. On the other hand, a creditor who merely files his claim with an assignee in a general assignment proceeding which has already been instituted cannot be said to have made the same free choice between bankruptcy and general assignment.

301 F.2d at 466.

Since the petitioning creditor voted for the assignment as a director and a shareholder, he was one of the principal parties in inducing the assignment and having thus procured the assignment, he could not complain of it by alleging it as an act of bankruptcy. Whether the court labelled its holding estoppel, election of remedies, or *volenti non fit injuria, see supra* at p. 697 and note 3, he was disqualified and the petition dismissed.

These cases, although arising in the context of a pre-petition creditor complaining of an act of bankruptcy to which he consented or participated in bringing about with knowledge, stand for the proposition that a bankruptcy proceeding is not to be

---

**5.** Prior to 1938, the courts generally held that participation in a general assignment for the benefit of creditors might disqualify a creditor from petitioning, but disagreed on the extent of participation necessary to result in disqualification. Although the courts differed as to whether the mere filing of a claim, receipt of a dividend, passive acquiescence, or active participation was necessary to disqualify a petitioning creditor, they unanimously held that a creditor who participated in inducing the act of bankruptcy, as contrasted with a creditor who merely participated after the act was induced, was precluded from petitioning. *See Dinerman,* 301 F.2d at 466.

maintained solely for the benefit of such a creditor.

To be sure, Congress, in enacting section 303(h), relaxed the grounds upon which an involuntary case may be filed and an order for relief entered. 2 K. Klee, R. Levin, J. Lewittes, H. Miller, P. Murphy, J. Samet & W. Stern, *Collier on Bankruptcy* ¶ 303.1 (15th ed. 1990). Technical and often hard to prove "acts of bankruptcy" were abolished and replaced with a standard whereby creditors need only prove that the debtor is generally not paying its debts as they come due or a custodian was appointed or took possession of the debtor's property.[6] *Id.*

But, rather than eliminate the ability to address abuse of the general type found in the *Dinerman* line of cases, Congress through enacting section 707(a), appears to have provided for the courts to consider such conduct under that section. Had Congress intended for section 303(h) or any other provision of the Code to abrogate the judicially created concept articulated in *Dinerman* and its forbearers, it should have made that intent specific. *See Midlantic Nat'l Bank v. New Jersey Dep't of Envt'l Protection,* 474 U.S. 494, 503, 106 S.Ct. 755, 759–60, 88 L.Ed.2d 859 (1986).

### C

■ Indeed, without such construction of section 707(a), there would be considerable potential for abuse. The Code provides only that an alleged debtor can file an answer to an involuntary petition. *See* 11 U.S.C. § 303(d). When an alleged debtor defaults, as here, an order for relief is entered. *See* 11 U.S.C. § 303(h). Section 303(d) precludes non-petitioning creditors from opposing the petition. *In re Earl's Tire Svc. Inc.,* 6 B.R. 1019, 1021–22 (D.Del. 1980); *In re New Era Co.,* 115 B.R. 41 (Bankr.S.D.N.Y.1990), *citing, inter alia, In re Gold Metal Packing Corp. (Candido v. Schmitt),* 470 F.2d 186 (2d Cir.1972) and *In re Carden,* 118 F.2d 677 (2d Cir.1941); *In re A & B Liquidating, Inc.,* 18 B.R. 922, 924–25 (Bankr.E.D.Va.1982), *cert. denied sub nom McClave & Co. v. Carden,* 314 U.S. 647, 62 S.Ct. 91, 86 L.Ed. 519 (1941); *In re Belize Airways, Ltd.,* 18 B.R. 485, 488 (Bankr.S.D.Fla.1982). Section 303(j) merely addresses dismissal for an involuntary case on motion of a petitioning creditor, on consent of all parties in interest or for want of prosecution.[7] Nowhere in the Code is it indicated that Congress contemplated, but rejected, a remedy for abuse by a petitioning creditor where the debtor had no interest in contesting the petition. Thus, not to construe section 707(a) to vest the court with authority to find cause in the abuse of creditors through the continued maintenance of a bankruptcy case commenced by the filing of an involuntary petition would be to permit such abuse. Congress could not have intended such a result.

---

6. Section 303(h) provides:

   If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—

   (1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute; or

   (2) within 120 days before the date of the filing of the petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

   11 U.S.C. § 303(h).

7. Section 303(j) provides

   Only after notice to all creditors and a hearing may the court dismiss a petition filed under this section—

   (1) on the motion of a petitioner;

   (2) on consent of all petitioners and the debtor; or

   (3) for want of prosecution.

   11 U.S.C. § 303(j). The legislative history indicates that "the purpose of this subsection is to prevent collusive settlements among the debtor and the petitioning creditors while other creditors, that wish to see relief ordered with respect to the debtor but that did not participate in the case, are left without sufficient protection." H.R.Rep. No. 595, 95th Cong., 1st Sess. 324 (1977), U.S.Code Cong. & Admin.News 1978, p. 6280; S.Rep. No. 989, 95th Cong., 2d Sess. 35 (1978), U.S.Code Cong. & Admin.News 1978, p. 5821.

Nor can it be said that Congress, in enacting section 303(d), and thereby precluding creditors from opposing an involuntary petition, intended to also preclude creditors from making a motion under section 707(a). We recognize that the *Carden* Court, in addressing an argument that under section 18(b) of the former Bankruptcy Act, a creditor could oppose an involuntary petition on equitable grounds notwithstanding the bar of 11 U.S.C. § 41(b) (1938) (repealed), the predecessor to section 303(d) of the Code, rejected such an attempt stating, in effect, that the limitation of the statute is not to be ignored. 118 F.2d at 679.[8] But section 707(a) is *not* so limited. Congress surely knew how to limit section 707(a) to preclude motions to dismiss by creditors had it so intended. *See* Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum.L.Rev. 527, 535–36 (1947). It having failed to do so, section 707(a) must be construed to permit any party-in-interest to move the court for dismissal of the bankruptcy case on abuse constituting cause, as opposed to any of the grounds on which a debtor can oppose a petition, *see* 11 U.S.C. § 303(h), n. 6 *supra.* Thus, construed, the words of both sections are enforced consistent with each other and the ability of the courts to deal with cause prejudicial to creditors, *see* 11 U.S.C. § 707(a)(1), is preserved.

8. Section 303(d) was derived from section 18(b) of the former Bankruptcy Act, 11 U.S.C. § 41(b) (1938), of which an earlier version expressly permitted non-petitioning creditors to respond to an involuntary petition. 2 *Collier* ¶¶ 303.-20[1][5]. The change was intended to prevent non-petitioning creditors from protecting voidable interests acquired from the debtor or gaining some other undue advantage at the expense of other creditors, contrary to the policy of equitable distribution among creditors. *Gold Metal,* 470 F.2d at 187; *Carden,* 118 F.2d at 679; *Earl's Tire,* 6 B.R. at 1021–22; *Belize,* 18 B.R. at 488; *A & B,* 18 B.R. at 924–25; 2 *Collier* ¶¶ 303.-20[1][5].

In *Carden,* the objecting creditor sought dismissal to prevent avoidance of a judgment lien in its favor, precisely the harm Congress sought to eschew by revising § 18(b). It was not alleged that the petitioning creditor had committed an abusive act. Not addressed by the court, therefore, was whether the case would have been dismissed in circumstances such as those in the instant case, *i.e.,* where the petitioning

Nor can it be said that the enactment of section 707(b), 11 U.S.C. § 707(b), bars a motion by a creditor seeking dismissal for cause consisting of abuse.[9] Though it had earlier rejected the criterion that a debtor's ability to repay debts might be "cause" for dismissal under section 707(a), Congress added section 707(b) in 1984 in response to perceived abuses of Chapter 7 by individuals with primarily consumer debts who were able to pay their debts. 4 R. D'Agostino, M. Cook, R. Mabey, A. Pedlar, H. Sommer & B. Zaretsky, *Collier on Bankruptcy* ¶ 707.04 (15th ed. 1990). The 1984 amendment recognized that abuse by an individual in consumer debt cases exemplifies adequate cause for dismissal. There is simply no indication that Congress at any time rejected, or sought to limit, in section 707(b), the notion that a corporate or partnership bankruptcy case should not be maintained for the sole benefit of a junior secured creditor through avoidance of a foreclosure consented to by that creditor.

These notions give rise to the further notion that a chapter 7 proceeding involving a debtor corporation or partnership does not raise the strong concern for discharge of honest individual debtors that is the principal purpose of the chapter. Corporate and partnership debtors are not eli-

creditor committed an act which would have been grounds for dismissal under another provision of the statute, and where unsecured creditors stood to lose nothing from dismissal. Thus it cannot be argued that permitting a non-petitioning creditor to dismiss for abuse under section 707(a) circumvents 303(d) by delaying opposition until after an order for relief has been entered, where there is no distribution for the benefit of creditors other than the one who has committed the abuse.

9. Section 707(b) provides:
After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if its finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.
11 U.S.C. § 707(b).

gible for discharge. 11 U.S.C. § 727(a)(1).[10] Dismissal on the basis of the conduct of a petitioning creditor of a corporate or partnership debtor would not run counter to the strong concern that honest individuals should receive a fresh start through discharge.[11]

In sum, construction of section 707(a) to include such conduct by a petitioning creditor within the notion of "cause" and to permit a creditor to seek dismissal on that ground falls easily within the language of section 707(a), *see United States v. Ron Pair Ent.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), is supported by and is consistent with related provisions of the Bankruptcy Code and accords with and enforces applicable policy. Thus is the statute to be so construed. *See, e.g., Blue Chip Stamps v. Manor Drug Stores, Inc.*, 421 U.S. 723, 733–34, 95 S.Ct. 1917, 1924–25, 44 L.Ed.2d 539 (1975).

## D

Better reasoned authority under the Code, moreover, indicates that the courts can, on a case by case basis, *Sky Group*, 108 B.R. at 90; 4 *Collier* ¶ 707.03, limit or preclude bankruptcy relief in highly egregious circumstances, like those present in *Dinerman*. In *United States v. Royal Business Funds Corp.*, 724 F.2d 12 (2d Cir.1983), for example, the debtor consented to a receivership whereby the SBA, its major creditor, would collect and administer, under district court supervision, the debtor's assets, and provide additional funding to repay certain debts. The debtor then filed a Chapter 11 petition. Although section 707(a) was not applicable, the Sec-

ond Circuit affirmed the stay of chapter 11 proceedings, because the debtor's "consent to the receivership and limitation on the powers of the board and its acquiescence in the provision of fresh capital from the SBA cannot be brushed aside." *Id.* at 15. Along with infusion of fresh capital, the petitioner's pre-petition consent to extra-bankruptcy relief limited its right to file for bankruptcy relief.

In *Sky Group*, 108 B.R. 86, a secured creditor moved for dismissal of an involuntary petition. Citing numerous chapter 13 cases, the court expressly held that dismissal of an involuntary petition could be had under section 707(a), were it shown that the involuntary petition was filed in bad faith, as determined on an *ad hoc* basis, and depending on whether any abuses of the provisions, purpose, or spirit of bankruptcy law had occurred. *Id.* There, however, the petitioning creditors acted on the debtor's representations that, if a secured party were to take ownership of the debtor's property, there would be no assets to pay other creditors, and the debtor's plea that they not interfere with a contract between the debtor and the secured party. There was no pre-petition consent by them. The court concluded that there was no abuse but rather an effort to preserve the estate for all.

In *In re John Oliver Co., Inc.*, 24 B.R. 539 (Bankr.D.Mass.1982), a secured creditor sought to dismiss an involuntary petition on the ground that the petitioning creditors had participated in an assignment. It held, assuming *arguendo* the continued validity of the *Dinerman* line of cases, that the petitioning creditors were not barred from filing, because at the time

---

**10.** Section 727(a)(1) provides that "the court shall grant the debtor a discharge, unless—(1) the debtor is not an individual." The term "individual" does not include a partnership. *See* 11 U.S.C. § 101(33).

**11.** Misplaced is the Trustee's reliance on *In re Kragness*, 63 B.R. 459 (Bankr.D.Ore.1986), for the proposition that "dismissal is not warranted even when the remaining assets were foreclosed upon prior to the filing." Pl.'s Memo., p. 12. There, a voluntary petition was sought to be dismissed solely on the ground that the debtors filed it to take advantage of § 541(a)(5)(A) which would have excluded from the estate pro-

ceeds of a testamentary trust. The court held that § 707(b) was not applicable because the case did not concern primarily consumer debts and that the legislative history indicated that "cause" under § 707(a) was not satisfied by a debtor's ability to pay its debts. As counsel for the Trustee indicates, the *Kragness* Court stated that it knew of no case of dismissal where an individual debtor's sole motivation was to avail itself of the legitimate protections of the Code. Here, the Debtor is a partnership and the case benefits only a junior mortgagee who consented to foreclosure.

they approved the assignment, they did not know that a secured creditor had not yet perfected its interest and that they therefore could have avoided its alleged lien under section 547 of the Code for all.

In contrast, the court in *In re Win–Sum Sports, Inc.*, 14 B.R. 389, 392 (Bankr.D. Conn.1981), narrowly construed *Dinerman* to hold that inducing an act of bankruptcy precludes a creditor from petitioning. The court thus held that, since acts of bankruptcy were no longer applicable, dismissal was not warranted under *Dinerman.* There, however, a principal of the debtor was alleged to have agreed to indemnify the petitioning creditors for losses and costs resulting from the dismissal of the petition; the petitioning creditors did not assent to non-bankruptcy relief. Similarly, the court in *In re Latimer*, 82 B.R. 354, 361–62 (Bankr.E.D.Pa.1988) indicated its belief that section 707(b) limits the abuse that can constitute "cause" as defined in section 707(a).

These courts, unlike the *Sky Group* Court, failed to recognize that Congress did not contemplate or intend the bankruptcy courts being unable to address abuse and to recognize the limited scope of section 707(b). Acts of Bankruptcy have been repealed, but potential abuse similar to that found in *Dinerman* and its predecessors can occur. No policy argues in favor of the courts being unable to address that type of abuse as "cause" under section 707(a), at least in a corporate or partnership proceeding.

### III

■ In the case at bar, Eagle clearly consented in writing to foreclosure of the single asset of the Debtor. Unlike the creditors in *John Oliver*, Eagle makes no claim that it was unaware of its rights or relevant facts when it did so. It makes no allegation as to any irregularities in the sale. *See* 79 N.Y.Jur.2d Mortgages § 714 (1989). No fraud or bad faith on the part of the Debtor or Bank Leumi in procuring

Eagle's consent is alleged. Although the complaint contains general allegations of fraud and bad faith, Compl. ¶ 9, it truly specifies actual or constructive fraud only through the foreclosure sale, Compl. ¶¶ 15, 18, 20–23. While Eagle did not induce or initiate the foreclosure action, it, nevertheless, affirmatively consented to it, attended the sale, and had the opportunity to bid. It was not a mere passive participant. At no time, although afforded the opportunity at the sale and the confirmation hearing, did Eagle object to the foreclosure sale.[12] Instead it appears on this record that Eagle knowingly gave its consent on the basis of its right to proceeds of the foreclosure sale in excess of the Bank's debt, if any, and the right to seek a deficiency judgment against the Debtor, and its remedies under state law to overturn the sale. *See* 79 N.Y. Jur.2d Mortgages §§ 701, 706–719, 756 (1989). Unlike the petitioning creditors in *Sky Group* and *John Oliver*, Eagle made "a free choice" between foreclosure and bankruptcy, or consented to extra-bankruptcy relief, within the meaning of *Dinerman*, 301 F.2d at 466, and *Royal Business Funds*, 724 F.2d at 15–16.

Here, moreover, there is more than mere consent by Eagle. Not only did Eagle consent to an extra-bankruptcy remedy, the bankruptcy protection it has invoked is for the benefit of no party other than itself. That benefit is to be accomplished by the Trustee's complaint to avoid the very foreclosure sale to which it consented on the ground that bids were insufficient at a sale of which Eagle was given notice and even attended.

This is an abuse the courts are not to ignore: if the Trustee prevails in his complaint and the foreclosure sale consented to by Eagle is avoided, only Eagle will benefit since no allegation is made that the value of the property exceeds the secured claims of the Bank and Eagle under section 506(a). The Trustee makes no claim that maintaining the petition would yield any benefit to creditors other than Eagle, through lien

---

12. The letter of the Trustee's counsel to the state court, Fox Aff., Letter dated 12/1/89 (Exh. P), was written on behalf of the estate, not Eagle, his former client, Compl. ¶ 17. Moreover, the objection to confirmation of the sale as violative of the stay was not pressed.

avoidance, *John Oliver*, or in any other way provide funds for distribution, *Sky Group*.[13] Dismissal would result in no prejudice to the general creditors if any. A court of equity, guided by equitable doctrines and principles, except in so far as they are inconsistent with the Code, *see Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206–07, 108 S.Ct. 963, 968–69, 99 L.Ed.2d 169 (1988); *S.E.C. v. United States Realty Co.*, 310 U.S. 434, 455, 60 S.Ct. 1044, 1053, 84 L.Ed. 1293 (1940), should not permit such an egregious result. As in *Moulton*, *Goldman–Rosenzweig* and *Dinerman*, equity mandates the dismissal of this case.[14]

For the foregoing reasons, the instant bankruptcy case must be dismissed. Submit order.

**13.** The *Sky Group* Court declined to abstain from the case under § 305, finding that only the secured creditor stood to benefit from abstention while all creditors would be substantially or entirely satisfied in a bankruptcy proceeding. *See* 11 U.S.C. § 305(a)(1). Similarly, the *John Oliver* Court declined to abstain under § 305 because the bankruptcy proceeding provided the remedy of lien avoidance unavailable in a non-bankruptcy proceeding.

The *Win–Sum* Court dismissed the petition under § 305, finding that the case fell squarely within its scope, as indicated by the legislative history, *i.e.*, "the court may dismiss ... if an arrangement is being worked out by creditors of the debtor out of court, there is no prejudice to the rights of creditors in that arrangement, and an involuntary case has been commenced by a few recalcitrant creditors to provide a basis for future threats to extract full payment." H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 325 (1977), U.S.Code Cong. & Admin.News 1978, p. 6281; S.Rep. No. 95–989, 95th Cong., 2d Sess. 35–36 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5821, 5822.

The leading commentator indicates that both § 707 and § 305 are sources of authority for dismissal of a chapter 7 case. 4 R. D'Agostino, M. Cook, R. Mabey, A. Pedlar, H. Sommer, B. Zaretsky, *Collier on Bankruptcy* ¶ 707.03 (15th ed. 1990). Some courts, recognizing the risk of "unbridled discretion" to abstain and non-appealability of a ruling under § 305, 11 U.S.C. § 305(c), consider abstention an exception and not the rule. *See In re Sky Group Int'l, Inc.*, 108 B.R. 86, 91 (Bankr.W.D.Pa.1989); *Win–Sum*, 14 B.R. at 393, n. 8, *citing In re Luftek, Inc.*, 6 B.R. 539, 548 (Bankr.E.D.N.Y.1980). Others more narrowly construe abstention to refer to only those grounds articulated by the Supreme Court in *Moses H. Cone Mem. Hosp. v. Mercury Constr.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) and *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940). *See, e.g., John Oliver* and *In re Martin–Trigona*, 35 B.R. 596 (Bankr.S.D.N.Y.1984).

**14.** By holding that maintaining the petition would constitute an abuse of Chapter 7, we do not purport to engraft a standard for abuse. We note only that in these *sui generis* circumstances, there is a clear abuse of Chapter 7 constituting cause under § 707(a) and dismissal for that reason is required.

Given our holding that the bankruptcy case is to be dismissed, we do not consider the alternative request for abstention under 11 U.S.C. § 305 or the branch of the motion seeking dismissal of the adversary proceeding.